1  Howard D. Hall, Esq. (State Bar No. 145024)
   Kevin S. Kim, Esq. (State Bar No. 275200)
2  GREEN & HALL, A PROFESSIONAL CORPORATION
   1851 East First Street, 10th Floor
3  Santa Ana, California 92705-4052
   Telephone:  (714) 918-7000
4  Facsimile:  (714) 918-6996

5  Attorneys for Defendants
   NATIONSTAR MORTGAGE LLC and AURORA
6  LOAN SERVICES, LLC

7

8              **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11  EDUARDO SANCHEZ, an individual,     ) Case No. 2:13-cv-08846-MMM-RZ
                                        )
12           Plaintiff,                 ) JUDGE:  Hon. Margaret M. Morrow
                                        ) CTRM:   780
13       vs.                            )
                                        ) **MEMORANDUM OF POINTS**
14  AURORA LOAN SERVICES, LLC;          ) **AND AUTHORITIES IN SUPPORT**
    NATIONSTAR MORTGAGE LLC; and        ) **OF DEFENDANTS' MOTION TO**
15  Does 1-10, inclusive,               ) **DISMISS PLAINTIFF'S**
                                        ) **COMPLAINT**
16           Defendants.                )
                                        ) DATE:  March 10, 2014
17                                      ) TIME:  10:00 a.m.
                                        ) CTRM:  780
18                                      )
                                        ) Action Filed:     October 29, 2013
19  _____       ) Action Removed:  December 2, 2013

20

21

22

23

24

25

26

27

28

GREEN & HALL
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................... 1

II.   STATEMENT OF FACTS ...................................................................... 2

III.  DISCUSSION .......................................................................................... 4

    A.    Applicable Legal Standard ................................................................ 4

    B.    Plaintiff Fails to State a Claim for Violation of California
        Homeowner Bill of Rights ("HBOR") ............................................... 5

    C.    Plaintiff Fails to State a Claim for Violation of *California
        Civil Code § 2923.5* ........................................................................ 7

    D.    Plaintiff Fails to State a Claim for Negligence ................................. 8

        1.    Plaintiff fails to allege the existence of a duty ........................... 9

        2.    Plaintiff fails to allege a breach of duty .................................. 10

        3.    Plaintiff fails to allege causation and damage ......................... 11

    E.    Plaintiff Fails to State a Claim for Promissory Estoppel .................. 12

        1.    Plaintiff cannot maintain a Promissory Estoppel
            claim because he alleges a promise exchanged for
            consideration. ........................................................................ 12

        2.    Plaintiff fails to plead a clear and unambiguous
            promise ................................................................................... 13

        3.    Plaintiff fails to plead detrimental reliance ............................. 14

        4.    Plaintiff fails to plead injury .................................................. 14

    F.    Plaintiff Fails to State a Claim for Promissory Fraud ..................... 15

    G.    Plaintiff Fails to State a Claim for Breach of Contract .................... 16

    H.    Plaintiff Fails to State a Claim for Breach of the Implied
        Covenant of Good Faith and Fair Dealing ....................................... 18

    I.    Plaintiff Fails to State a Claim for Intentional Infliction of
        Emotional Distress ......................................................................... 19

    J.    Plaintiff Fails to State a Claim for Violation of the UCL ................. 22

        1.    Plaintiff does not have standing to bring a UCL
            claim. ..................................................................................... 22

i

## <u>TABLE OF CONTENTS (cont.)</u>

<u>Page</u>

2. Plaintiff fails to allege a violation of the "unlawful" prong ............................................................................................... 23

3. Plaintiff fails to allege a violation of the "fraudulent" prong ............................................................................................... 23

4. Plaintiff fails to allege a violation of the "unfair" prong ............................................................................................... 23

K. Plaintiff Fails to State a Legally Cognizable Quiet Title Action ............................................................................................... 24

L. The Court Should Dismiss the Complaint With Prejudice and Without Leave to Amend ............................................................... 25

IV. CONCLUSION ............................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Accord Benson v. Citibank, N.A.*
2013 WL 1703380 (N.D. Cal. Apr. 19, 2013) ............................................... 12

*Alvarado v. Aurora Loan Servs., LLC*
2012 WL 4475330 (C.D. Cal. Sept. 20, 2012)........................................ 8, 9, 23

*Ansanelli v. JP Morgan Chase Bank, N.A.*
2011 WL 1134451 (N.D. Cal. Mar. 28, 2011) ............................................... 10

*Armstrong v. Chevy Chase Bank*
*FSB*, 2012 WL 4747165 (N.D. Cal. Oct. 3, 2012)........................................ 10

*Aspiras v. Wells Fargo Bank, N.A.*
219 Cal. App. 4th 948 (2013).................................................................... 9, 10

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................................. 4

*Boatright v. Aurora Loan Servs.*
2012 WL 2792415 (N.D. Cal. July 9, 2012) ........................................... 17, 19

*Bowe v. Am. Mortgage Network, Inc.*
2013 WL 1303788 (C.D. Cal. Mar. 28, 2013) ................................................. 7

*Bunce v. Ocwen Loan Servicing, LLC*
2013 WL 3773950 (E.D. Cal. July 17, 2013) ................................................ 10

*Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*
20 Cal.4th 163 (1999)................................................................................... 23

*Chan Tang v. Bank of Am., N.A.*
2012 WL 960373 (C.D. Cal. Mar. 19, 2012) ................................................. 21

*Cordero v. Bank of Am. N.A.*
2013 WL 589185 (C.D. Cal. Feb. 14, 2013) ................................................... 8

*DeLeon v. Wells Fargo Bank, N.A.*
2011 WL 311376 (N.D.Cal. Jan.28, 2011) ................................................... 11

*Diunugala v. JP Morgan Chase Bank*
2013 WL 5568737 (S.D. Cal. Oct. 3, 2013)................................................... 10

*Doe v. United States*
58 F.3d 494 (9th Cir. 1995)......................................................................... 25

*Dorado v. Shea Homes Ltd. P'ship*
2011 WL 3875626 (E.D. Cal. Aug. 31, 2011) ............................................... 19

iii

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Emick v. JPMorgan Chase Bank*
(E.D. Cal. July 19, 2013) 2013 WL 3804039 ................................................. 5

*First Commercial Mortgage Co. v. Reece*
89 Cal.App.4th 731, 108 Cal.Rptr.2d 23 (2001) ...................................... 16, 18

*Fontenot v. Wells Fargo Bank, N.A.*
198 Cal. App. 4th 256 (2011) ................................................................... 12

*Graham v. U.S. Bank, N.A.*
2013 WL 2285184 (N.D. Cal. May 23, 2013) ............................................. 8

*Graybill v. Wells Fargo Bank, N.A.*
2013 WL 978245 (N.D. Cal. Mar. 12, 2013) ............................................. 16

*Herrejon v. Ocwen Loan Servicing, LLC*
2013 WL 5934148 (E.D. Cal. Nov. 1, 2013) ............................................... 8

*Jenkins v. JP Morgan Chase Bank, N.A.*
(2013) 216 Cal.App.4th 497 ..................................................................... 22

*Jolley v. Chase Home Fin., LLC*
213 Cal. App. 4th 872(2013) ................................................................... 10

*Juarez v. Suntrust Mortgage, Inc.*
2013 WL 1983111 (E.D. Cal. May 13, 2013) .............................................. 9

*Justo v. Indymac Bancorp*
2010 WL 623715 (C.D. Cal. Feb. 19, 2010) ...................................... 17, 18, 21

*Karimi v. Wells Fargo*
2011 WL 10653746 (C.D. Cal. May 4, 2011) ............................................ 20

*Kim v. Regents of Univ. of Cal.*
80 Cal.4th 160, 164 (2000) ..................................................................... 18

*Lee v. City of Los Angeles*
250 F.3d 668 (9th Cir.2001) ................................................................ 4, 18

*Lester v. J.P. Morgan Chase Bank*
2013 WL 3146790 (N.D. Cal. June 18, 2013) ........................................... 17

*Lingad v. Indymac Fed. Bank*
682 F. Supp. 2d 1142 (E.D. Cal. 2010) .................................................... 19

*Mabry v. Superior Court*
185 Cal. App. 4th 208 (2010) .................................................................... 8

*Mehta v. Wells Fargo Bank, N.A.*
737 F.Supp.2d 1185 (S.D.Cal.2010) ................................................... 21, 24

iv

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Mendoza v. City of Los Angeles*
   66 Cal. App. 4th 1333 (1998)..........................................................................8

*Morgan v. AT & T Wireless Servs., Inc.*
   177 Cal. App. 4th 1235 (2009)....................................................................23

*Morgan v. U.S. Bank Nat. Ass'n*
   2013 WL 684932 (N.D. Cal. Feb. 25, 2013)........................................9, 12, 19

*Mullis v. United States Bank. Ct.*
   828 F.2d 1385 (9th Cir. 1987).....................................................................4

*Nymark v. Heart Fed. Sav. & Loan Ass'n.*
   231 Cal.App.3d 1089, 283 Cal.Rptr. 53 (1991)............................................8, 9

*Outten v. Bank of New York Mellon*
   2013 WL 6086899 (C.D. Cal. Nov. 18, 2013)..............................................24

*Paduano v. American Honda Motor Co., Inc.*
   169 Cal.App.4th 1453 (2009)....................................................................23

*Penney v. NDEX W. LLC*
   2013 WL 569176 *5 (C.D. Cal. Feb. 13, 2013).............................................14

*Perez v. Wells Fargo Bank, N.A.*
   2011 WL 3809808 (N.D. Cal. Aug. 29, 2011).........................................14, 18

*Ramirez v. Barclays Capital Mortgage*
   2010 WL 2605696 (E.D. Cal. June 28, 2010)...............................................9

*Resolution Trust Corp. v. BVS Dev.*
   42 F.3d 1206 (9th Cir.1994).......................................................................8

*Rosenfeld v. Nationstar Mortgage, LLC*
   2013 WL 4479008, n.4 (C.D. Cal. Aug. 19, 2013).......................................10

*Ross v. Creel Printing & Publ'g Co.*
   (2002) 100 Cal. App. 4th 736....................................................................20

*Rossberg v. Bank of Am., N.A.*
   219 Cal. App. 4th 1481 (2013)..................................................................15

*Scales v. First Horizon Home Loans*
   2012 WL 531022 (E.D. Cal. Feb. 17, 2012)................................................14

*Settle v. World Sav. Bank, F.S.B.*
   2012 WL 1026103 (C.D. Cal. Jan. 11, 2012)................................................9

*Singh v. Wells Fargo Bank*
   2011 WL 66167 (E.D. Cal. Jan. 7, 2011)...................................................15

v

## <u>TABLE OF AUTHORITIES (cont.)</u>

<u>Page(s)</u>

*US Ecology, Inc. v. California*
    129 Cal.App.4th 887(2005) ............................................................................ 12

*Velasco v. Homewide Lending Corp.*
    2013 WL 3188854 (C.D. Cal. June 21, 2013) ............................................... 24

*Yost v. Nationstar Mortgage, LLC*
    2013 WL 4828590  (E.D. Cal. Sept. 9, 2013) ............................................... 11

*Youngman v. Nevada Irr. Dist.*
    70 Cal. 2d 240 (1969) .................................................................................... 12

**<u>Statutes</u>**

Cal. Bus. & Prof. Code § 17204 .......................................................................... 22

Cal. Civ. Code § 2923.4 ......................................................................................... 7

Cal. Civ. Code § 2923.5 ...................................................................................... 7, 8

Cal. Civ. Code § 2923.5(g) ..................................................................................... 7

Cal. Civ. Code § 2923.6(c) ..................................................................................... 6

Cal. Civ. Code § 2923.6(c)-(e) ............................................................................... 6

Cal. Civ. Code § 2923.7(a) ..................................................................................... 6

Cal. Civ. Code § 2923.7(e) ..................................................................................... 6

Cal. Civ. Code § 2924.10(a) ................................................................................... 5

Cal. Fed. Rule Civ. Proc. 9(b) .............................................................................. 15

Fed. R. Civ. Proc., R. 8(a)(2) ................................................................................. 4

S:\Nationstar.Sanchez.Eduardo\Pleadings\Memo.MTD.doc

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   <u>INTRODUCTION</u>

On or about February 2013, Plaintiff EDUARDO SANCHEZ ("Plaintiff") sold his property located at 1453 Echo Park Avenue, Los Angeles, California 90026 (the "Property") to re-pay his mortgage debt that had been in default since June 2011. Plaintiff alleges that he sold the property for $620,000, well-in-excess of the approximately $410,000 unpaid principal balance on Plaintiff's loan.  Apparently unsatisfied with the more than $200,000 in profit from the sale transaction, Plaintiff brings this action against Defendants NATIONSTAR MORTGAGE LLC ("Nationstar") and AURORA LOAN SERVICES, LLC ("Aurora") (collectively, "Defendants"), seeking to recover alleged damages and recoup the Property. Plaintiff claims that Aurora agreed not to foreclose on the Property and/or modify his loan, and that when Aurora assigned the loan to Nationstar, Nationstar reneged on this alleged agreement.  Plaintiff claims that Nationstar's failure to honor the agreement forced him to conduct a "short sale" of the Property at below fair market value in order to thwart foreclosure.

Plaintiff's boilerplate allegations are baseless and without factual or legal support.  To start, Plaintiff cannot point to any enforceable contract, nor can he even identify the terms of this alleged agreement with any level of clarity.  To the extent Plaintiff alleges there was an oral contract to modify the terms of his loan, his claims are barred by the statute of frauds.  Further, even assuming *arguendo* that there was an enforceable agreement, Plaintiff fails to allege that Defendants breached any agreement, or that Defendants even had any involvement in the sale of his home.  In fact, Defendants did not sell the Property in a foreclosure sale nor was there a short sale that required Nationstar's approval.  Rather, Plaintiff **voluntarily** sold the Property (for more than $200,000 over the remaining loan balance) to settle his defaulted mortgage debt.  Plaintiff also cannot explain how Defendants are responsible for his loan default that put him at risk of foreclosure, and why he did not

1

GREEN & HALL
ATTORNEYS AT LAW

(or could not) pursue other available options before he elected to sell his home for a price he claims was below fair market value.  Indeed, ***Plaintiff admits that Nationstar offered him a loan modification*** before he elected to sell his home -- which offer he apparently rejected for reasons unknown.  Accordingly, Plaintiff has no one else but himself to blame for losing his home and his failure to obtain a more lucrative sales price.  The Court should dismiss the Action in its entirety, with prejudice.

## II.  <u>STATEMENT OF FACTS</u>

On February 2, 2007, Plaintiff borrowed $361,000.00 from Resmae Mortgage Corporation (the "Loan"). The Loan was secured by a Deed of Trust recorded against the Property.  *See* Complaint, Exhibit ("Ex.") A, "Deed of Trust."  On September 22, 2011, the beneficial interest in the Deed of Trust was assigned to Aurora.  *See* Complaint, Ex. B, "Corporate Assignment of Deed of Trust."

On or about June 2011, Plaintiff fell delinquent on his loan payment, and after several months of non-payment on the Loan, a Notice of Default was recorded on December 14, 2011, for past due payments totaling approximately $26,862.  *See* Notice of Default attached to Defendants' Request for Judicial Notice ("RJN") as Ex. "1".  Plaintiff alleges that on May 28, 2012, he entered into an agreement with Aurora, pursuant to which Plaintiff agreed to pay $30,000 by June 1, 2012, and the remaining outstanding arrears of $14,000 from August 2012 to February 2013, and in exchange, Aurora promised not to initiate foreclosure proceedings on the Property. ¶15.[1]  Plaintiff alleges that he made the $30,000 payment to Aurora in two installments: cashiers checks in the amount of $22,500 and $7,500 dated May 18, and May 29, 2012, respectively.  Complaint, Ex. G.  Plaintiff does not provide any documents or written material reflecting the alleged loan modification agreement,

---

[1] All "¶" and "¶¶" references are to the Complaint unless otherwise indicated.

2

GREEN & HALL
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1   nor does Plaintiff allege that he made the $14,000 payment in outstanding arrearages

2   pursuant to the alleged agreement.

3       Thereafter, Plaintiff's Loan was assigned to Nationstar on July 1, 2012.  *See*

4   Complaint, Ex. C, "Corporate Assignment of Deed of Trust."  Following the service

5   transfer from Aurora to Nationstar, Plaintiff claims that Nationstar failed to honor his

6   purported agreement with Aurora. ¶21.

7       Two months later, on or about October 23, 2012, Plaintiff applied for a loan

8   modification with Nationstar.  ¶23.  On November 28, 2012, a Notice of Trustee Sale

9   was recorded, notifying Plaintiff of an unpaid loan balance in the amount of

10  $410,253.86, and scheduling a trustee sale for December 27, 2012.  Notice of

11  Trustee's Sale, RJN Ex. "2".  Thereafter, sometime "during the holidays," Plaintiff

12  claims that Nationstar offered him a loan modification.  ¶26.  Although unclear from

13  the Complaint, it appears that Plaintiff rejected the loan modification offer made by

14  Nationstar. *Id.*

15      Thereafter, on or about February 6, 2013, Plaintiff voluntarily sold the

16  Property to a third-party purchaser for the allegedly "below market" price of

17  $620,000.  ¶27; Grant Deed, RJN Ex. "3".  Although Plaintiff admits that *he* sold the

18  Property (¶27), Plaintiff incorrectly alleges throughout his Complaint that the

19  Property was foreclosed on and sold in a trustee sale.  *See e.g.*, ¶¶39, 56, 78, 91, 98,

20  130, 150.  As the Grant Deed illustrates, these allegations are factually wrong.  RJN

21  Ex. "3".  Plaintiff also erroneously alleges that he was "forced to short sale [sic] his

22  home."  ¶27.  The sale of the Property was not a short sale as the sales price far

23  exceeded the loan balance (by over $200,000), and thus, Plaintiff did not need

24  Nationstar's approval to complete the transaction.  RJN, Ex. "1"

25      Plaintiff filed his Complaint on October 29, 2013.  *See generally*, Complaint.

26  The Action was removed to this Court on December 2, 2013, based on federal

27  diversity jurisdiction. *See* Dkt 1, Notice of Removal.

28

3

III.   **DISCUSSION**

    A.   **Applicable Legal Standard**

      Pursuant to Federal Rules of Civil Procedure 8(a)(2), a plaintiff must plead "a short and plain statement of the claim showing that the pleader is entitled to relief[.] . . ." Mere conclusions and "formulaic recitations of the elements of a cause of action" are insufficient to state a claim for relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In order to survive a Rule 12(b)(6) pleadings challenge, a complaint must state a claim for relief that is "plausible on its face." *Id.*, at 570. A dismissal is proper when the plaintiff either lacks a "cognizable legal theory" or where there is a "legally cognizable" right but the plaintiff fails to allege sufficient facts to support the claim. *Id.*, at 555-56.

      In determining a motion to dismiss, the Court may consider documents outside the pleadings without converting the motion into a summary judgment. Among other things, the Court may consider documents that are "properly submitted as part of the complaint," documents on which plaintiff's complaint necessarily relies and whose authenticity is not contested, and matters of public record. *See Lee v. City of Los Angeles,* 250 F.3d 668, 688–89 (9th Cir.2001). A court need not accept as true allegations in a complaint that contradict facts which may be judicially noticed by the court. *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

      Plaintiff's assortment of boilerplate, cookie-cutter allegations falls woefully short of meeting the applicable pleading standards. As described *infra*, Plaintiff alleges violations of laws that were not even in effect when the alleged misconduct occurred (*see infra*, Section III.B.), and material contradictions and inconsistencies that Defendants can only surmise are allegations derived from pleadings filed in an unrelated matter. Particularly egregious is Plaintiff's erroneous allegations that the Property was sold in a foreclosure sale when, as Plaintiff admits and the public records confirm, he voluntarily sold the Property after rebuffing a loan modification offer from Nationstar. ¶¶26, 27. The haphazard nature of Plaintiff's allegations is

4

1   also manifest in the numerous duplicate paragraph numbers (*Compare* pp. 12-16

2   (¶¶60-73) *with* pp. 17-19 (¶¶60-73))**²** and missing paragraphs (e.g. ¶¶82, 104, 127)

3   that present additional hurdles to formulating a proper response.  In short and as

4   detailed herein, the Complaint fails to set forth any legally cognizable claim, and

5   should be dismissed with prejudice.

6       **B.**   **Plaintiff Fails to State a Claim for Violation of California**

7           **Homeowner Bill of Rights ("HBOR")**

8       Plaintiff claims Defendants violated HBOR by: (i) failing to provide written

9   acknowledgement of receipt of loan modification application; (ii) setting a date for a

10  trustee sale while Plaintiff's loan modification was pending (i.e. "dual-tracking");

11  and (iii) failing to provide Plaintiff with a single point of contact ("SPOC") to handle

12  the loss mitigation process.  ¶¶34-43.  As set forth below, Plaintiff cannot state a

13  claim for violation of HBOR because, among other things, none of the violations are

14  alleged to have occurred when HBOR was in effect.

15      HBOR was passed in July 2012, and took effect on January 1, 2013.  As courts

16  have determined, HBOR does not apply retroactively to conduct that occurred before

17  January 1, 2013.  *See Emick v. JPMorgan Chase Bank* (E.D. Cal. July 19, 2013)

18  2013 WL 3804039 *3 ("The HBOR became effective on January 1, 2013, and it does

19  not apply retroactively.").

20      **First**, Plaintiff does not (and cannot) allege any violation of HBOR's written

21  acknowledgement requirement.  HBOR requires that a servicer provide written

22  acknowledgement of receipt of a borrower's loan modification application within

23  five business days of receipt.  *California* Civil Code Section 2924.10(a).  As Plaintiff

24  admits, he submitted his loan modification application to Aurora in June 2011 (¶13),

25

26  ───────────────────

27  **²** For purposes of clarity, citations to duplicate paragraph numbers are accompanied
    by the applicable page and line of the Complaint in which the cited reference
    appears.

28

5

1   and re-submitted his application to Nationstar in June 2012, (¶23).  Accordingly,

2   Defendants could not have been in violation of HBOR because the law was not in

3   effect when Plaintiff submitted his applications and the alleged violation occurred.

4           **Second**, Plaintiff does not (and cannot) allege any violation of HBOR's

5   dual-tracking provisions for noticing a trustee sale while his loan modification

6   application was pending.  ¶¶37-39.  HBOR's dual-tracking provisions (codified

7   under *California* Civil Code §§ 2923.6(c)-(e)) prohibit servicers from proceeding

8   with foreclosure, by among other things, recording a Notice of Trustee Sale, if the

9   borrower has submitted a complete application for a first lien loan modification.  *See*

10  Civil Code § 2923.6(c).  Here, HBOR was not in effect when the relevant Notice of

11  Trustee Sale was recorded on November 28, 2012.  As such, Plaintiff fails to allege

12  any wrongdoing that gives rise to a cause of action for dual-tracking under HBOR.[3]

13          **Third**, Plaintiff does not (and cannot) allege any violation of HBOR's SPOC

14  provision.  HBOR's SPOC provision requires a borrower to provide a SPOC upon

15  the request of a borrower seeking foreclosure prevention alternatives.  *See* Civil Code

16  § 2923.7(a).  Lenders may appoint "an individual or a team of personnel" as

17  Plaintiff's single point of contact.  *See California* Civil Code § 2923.7(e).

18          Here, Plaintiff does not allege that he requested and failed to receive a SPOC

19  after January 1, 2013, when HBOR took effect.  Indeed, the only loss mitigation

20  communications alleged in the Complaint occurred in 2011 and 2012.  ¶¶11-28.

21  Moreover, Plaintiff acknowledges that he was in constant communication with

22  various Nationstar representatives regarding his loss mitigation options ( ¶¶20, 22,

23  25), undermining Plaintiff's allegations that he was not appointed an individual *or*

24  *team of personnel* as his SPOC.  Thus, Plaintiff does not allege any facts to support a

25  claim for violation of HBOR's SPOC provision.

26  _____

27  [3] Plaintiff again incorrectly contends that "the subject property was sold at the trustee

     sale." ¶39.

28

**C.** **Plaintiff Fails to State a Claim for Violation of *California* Civil Code § 2923.5**[4]

Plaintiff alleges that Defendants did not contact him to explore foreclosure alternatives prior to recording the NOD in violation of Civil Code § 2923.5.  ¶¶44-57.  Civil Code § 2923.5(a)(1) prohibits a mortgagee, trustee, beneficiary or authorized agent from filing a notice of default pursuant to Section 2924 until 30 days after initial contact to assess the borrower's financial situation and explore alternative options ***or*** 30 days after satisfying the due diligence requirements as described in subdivision (e).  Plaintiff fails to state a claim for violation of Section 2923.5.[5]

**First**, Plaintiff admits that Defendants explored foreclosure alternatives with Plaintiff prior to recording the NOD.  In fact, Plaintiff acknowledges that he was in "constant contact with [] Aurora, and ***on June 20, 2011*** sent in financial documents to Defendant's loan mitigation department, ***as requested by Defendant***."  ¶13 (emphasis added).  Accordingly, Plaintiff's own allegations belie his claim that Defendants violated Section 2923.5 by failing to communicate foreclosure alternatives with Plaintiff before recording the NOD.

**Second**, a servicer need not actually make contact with the borrower to satisfy the requirements of Section 2923.5, but may comply with the statute by exercising due diligence to contact the borrower.  Here, Plaintiff does not allege that Defendants never exercised due diligence to contact the borrower.  *Bowe v. Am. Mortgage*

---

[4] Although Plaintiff also claims to allege a violation of Civil Code § 2923.4 as noted in the section heading of the Complaint, the Complaint is devoid of any allegations with respect to Civil Code § 2923.4.  ¶¶44-57.

[5] As a threshold matter, Section 2923.5 only applies to mortgage servicers with 175 or fewer foreclosures in the preceding year.  *See* Civil Code §2923.5(g).  Nationstar foreclosed on more than 175 foreclosures in 2012, and thus is not subject to the provisions of Section 2923.5.  *See* California Department of Business Oversight, "California Foreclosure Reduction Act," attached as RJN, Ex. "4".

7

*Network, Inc.*, 2013 WL 1303788 *3 (C.D. Cal. Mar. 28, 2013) (dismissing Section 2923.5 claim because the plaintiff only alleged that the defendant did not contact him, but not that the defendant did not attempt to do so with due diligence).[6]

**Third**, postponement of a scheduled foreclosure sale is the only remedy available under Section 2923.5.  *Herrejon v. Ocwen Loan Servicing, LLC*, 2013 WL 5934148 *16 (E.D. Cal. Nov. 1, 2013) ("Section 2923.5 offers no post-foreclosure relief.")(citing *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 213 (2010)).[7]  Here, Plaintiff admits that he has sold the Property; thus, he is precluded from obtaining the only relief available under the statute.

### D.   Plaintiff Fails to State a Claim for Negligence

Plaintiff argues that Nationstar was negligent in failing to "adequately process [his] loan modification documents."  ¶63 at p.13.  Plaintiff fails to sufficiently allege the underlying elements for negligence.

In order to state a cause of action for negligence, a plaintiff must plead: "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998).  "Under California law, a lender does not owe a borrower or third party any duties beyond those expressed in the loan agreement, except[ ] those imposed due to special circumstance." *Resolution Trust Corp. v. BVS Dev.*, 42 F.3d 1206, 1214 (9th Cir.1994) (citing *Nymark v. Heart Fed. Sav. & Loan*

---

[6] *See also Cordero v. Bank of Am. N.A.*, 2013 WL 589185 *4, 5 (C.D. Cal. Feb. 14, 2013) ("Here, the FAC only alleges that Defendant failed to contact Plaintiff. Failure to contact a borrower is insufficient to establish a violation of Section 2923.5.").

[7] *See also Graham v. U.S. Bank, N.A.*, 2013 WL 2285184 *5 (N.D. Cal. May 23, 2013) ("[Plaintiff] does not assert any facts that would indicate that he is still in possession of his house and that the only remedy available under § 2923.5—postponement of the sale to comply with the statutory procedures—is available to him."); *Alvarado v. Aurora Loan Servs., LLC*, 2012 WL 4475330 *4 (C.D. Cal. Sept. 20, 2012) (noting "postponement of the sale is the only remedy available [under Section 2923.5]…. [and] [i]f the sale has already taken place, § 2923.5 does not provide the authority to set aside the sale.").

8

GREEN & HALL
ATTORNEYS AT LAW

1   *Ass'n.,* 231 Cal.App.3d 1089, 1096, 283 Cal.Rptr. 53 (1991)).  As Plaintiff admits,

2   the general rule is that "a financial institution owes no duty of care to a borrower

3   when the institution's involvement in the loan transaction does not exceed the scope

4   of its conventional role as a mere lender of money."  ¶61 at p.12, ¶64 at p.13;

5   *Nymark,* 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53.  Whether a duty of care exists is

6   a question of law that the court must determine.  *Ramirez v. Barclays Capital*

7   *Mortgage*, 2010 WL 2605696 *4 (E.D. Cal. June 28, 2010).

8         **1.**     **Plaintiff fails to allege the existence of a duty.**

9         Plaintiff fails to allege that Defendants owed him any duty in connection with

10   his loan modification application.  Courts have refused to recognize a duty owed by a

11   lender to a borrower with respect to loan modification activities, determining that

12   "offering loan modifications is sufficiently entwined with money lending so as to be

13   considered within the scope of typical money lending activities." *See e.g.*, *Aspiras v.*

14   *Wells Fargo Bank, N.A.*, 219 Cal. App. 4th 948, 964 (2013); *Juarez v. Suntrust*

15   *Mortgage, Inc.,* 2013 WL 1983111 *10-13 (E.D. Cal. May 13, 2013) (lending and

16   modification are sufficiently intertwined and the defendant-lender owed no duty with

17   respect to the plaintiffs' loan modification application); *Alvarado,* 2012 WL 4475330

18   at *6 (same).  Likewise, this Court in *Settle v. World Sav. Bank,* recognized the

19   "overwhelming weight of authority" that have characterized a loan modification as a

20   traditional money lending activity, and determined that no duty of care arose from

21   these loan modification activities.  2012 WL 1026103 at *8, 9, and 15 (C.D. Cal. Jan.

22   11, 2012).

23         Apart from conclusory statements, Plaintiff does not allege any facts that

24   demonstrate Defendants acted outside of their scope as the lender-servicer, or held

25   any interest in the loan outside of its role as a lender-servicer.  At most, Plaintiff

26   alleges that Defendants "engag[ed] in protracted loan modification negotiations"

27   (¶65 at 14:15), which by its definition is merely a renegotiation of the loan terms and

28   insufficient to impose a duty of care.  *See Morgan v. U.S. Bank Nat'n*, 2013 WL

684932 *3 (N.D. Cal. Feb. 25, 2013) ("renegotiation is the same activity that occurred when the loan was first originated; the only difference being that the loan is already in existence").

Plaintiff's reliance on *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 901(2013), to plead an existence of a duty of care is unavailing. ¶62 at p.13; ¶65 at 14:7-14.  As courts have determined, *Jolley* narrowly applies to construction loans, and the reasoning therein is inapplicable to the conventional residential loan that is at issue in the instant case.  *See e.g.*, *Diunugala v. JP Morgan Chase Bank,* 2013 WL 5568737 *4 (S.D. Cal. Oct. 3, 2013) ("The Court finds *Jolley* to be inapposite to this case, which involves a residential home loan and related loan servicing issues."); *Bunce v. Ocwen Loan Servicing, LLC*, 2013 WL 3773950 *5, 6 (E.D. Cal. July 17, 2013) (collecting cases where courts have found no duty based on lenders/servicers handling of loan modification process).  In fact, in a recently-published decision in *Aspiras*, the California Appellate Court expressly distinguished *Jolley* as a case that "involved a construction loan, a critical distinction that renders *Jolley* inapposite," and refused to impose a duty of care.  *Aspiras*, 219 Cal. App. 4th 948, 964-65.[8]

## 2.   Plaintiff fails to allege a breach of duty.

Even assuming *arguendo* that Defendants owed a duty with respect to Plaintiff's loan modification application, Plaintiff fails to sufficiently allege any breach of duty.  Plaintiff appears to argue that Defendants delayed and "[sic] sprung

---

[8] Nor should the Court adopt the minority view expressed in *Ansanelli v. JP Morgan Chase Bank,* that a duty of care arises in connection with the loan modification. 2011 WL 1134451 *7 (N.D. Cal. Mar. 28, 2011); ¶64 at p.13.  In fact, the overwhelming majority of courts have disagreed with the reasoning in *Ansanelli.  See e.g., Rosenfeld v. Nationstar Mortgage, LLC*, 2013 WL 4479008 *6, n.4 (C.D. Cal. Aug. 19, 2013) (finding *Ansanelli* "unpersuasive" and not in accord with "general consensus view"); *Bunce*, 2013 WL 3773950 at *5, 6 (noting courts have disagreed with the finding in *Ansanelli* that loan modification activities extend beyond role of traditional lender/servicer, and *Ansanelli* represents a minority view); *Armstrong v. Chevy Chase Bank, FSB,* 2012 WL 4747165 *4 (N.D. Cal. Oct. 3, 2012), appeal dismissed (Dec. 14, 2012) (finding "minority of cases" that follow *Ansanelli* "unpersuasive").

10

the loan modification process when it could have easily been completed in just a couple of hours." ¶71 at p.16.  However, Plaintiff's claim is merely conclusory as he fails to allege any facts that show Defendants negligently delayed the loan modification process.  In particular, Plaintiff does not allege **when** he submitted a loan modification to Aurora or Nationstar, **how long** it took for Defendants to review the application and come to a determination, or that Defendants **unduly** delayed (if delayed at all) the loan modification process for an improper purpose.  Indeed, Plaintiff acknowledges that his loan modification application was reviewed and **he received a loan modification offer** which he apparently rejected. ¶26.[9]  As such, Plaintiff fails to allege any facts that show Defendants breached any duty to review Plaintiff's loan modification application.

### 3.   Plaintiff fails to allege causation and damage

Plaintiff also fails to allege how Defendants' "prolonged" review of the loan modification caused him to incur any damage. Complaint, ¶¶72, 73 at p.16.  To start, the purported delay in the loan modification process did not prevent Plaintiff from refinancing his Property, nor did it force Plaintiff to sell the Property.  Further, any alleged damage to Plaintiff's credit or inability to secure credit was not caused by any delay in the loan modification review; it was caused by Plaintiff's decision to default on his Loan back in June 2011.  *See Yost v. Nationstar Mortgage, LLC*, 2013 WL 4828590 *12 (E.D. Cal. Sept. 9, 2013) (plaintiff failed to allege causation because "[i]t was Plaintiffs' default that caused the foreclosure and Plaintiffs' injury, not Defendants' denial of a loan modification."); *DeLeon v. Wells Fargo Bank, N.A.,* 2011 WL 311376, at *7 (N.D.Cal. Jan.28, 2011) (same).  Finally, Defendants did not

---

[9] Thus, Plaintiff's allegation that Defendants prevented him from obtaining a loan modification or that "[he] was never offered a practical loan modification" is flat wrong. ¶¶72, 73 p. 16.  Plaintiff was offered a loan modification, but he elected to sell the Property instead.  ¶26.

11

1   prevent Plaintiff from "obtaining loan modification assistance," they granted him a

2   loan modification.  ¶26.

3       **E.    Plaintiff Fails to State a Claim for Promissory Estoppel**

4       Plaintiff fails to state a claim for promissory estoppel based on his allegation

5   that Defendants promised not to foreclose on the Property.  ¶¶66-81 at pp. 18-21.  In

6   order to state a claim for promissory estoppel, a plaintiff must allege: "(1) the

7   existence of a promise clear and unambiguous in its terms; (2) reliance by the party

8   to whom the promise is made; (3) that any reliance was both reasonable and

9   foreseeable; and (4) that the party asserting the estoppel was injured by his reliance."

10  *US Ecology, Inc. v. California,* 129 Cal.App.4th 887, 901(2005).  As detailed below,

11  Plaintiff fails to state a claim for promissory estoppel.

12          **1.    Plaintiff cannot maintain a Promissory Estoppel claim**

13                **because he alleges a promise exchanged for consideration.**

14      "A plaintiff cannot state a claim for promissory estoppel when the promise

15  was given in return for proper consideration."  *Fontenot v. Wells Fargo Bank, N.A.*,

16  198 Cal. App. 4th 256, 275 (2011).  "The purpose of [the promissory estoppel]

17  doctrine is to make a promise binding, under certain circumstances, without

18  consideration in the usual sense of something bargained for and given in exchange. If

19  the promisee's performance was requested at the time the promisor made his promise

20  and that performance was bargained for, the doctrine is inapplicable."  *Youngman v.*

21  *Nevada Irr. Dist.*, 70 Cal. 2d 240, 249 (1969); *see also Morgan v. Aurora Loan*

22  *Servs., LLC*, 2013 WL 3448552 *8 (C.D. Cal. July 9, 2013) ("Plaintiff cannot state a

23  claim for promissory estoppel on the basis of her bargained-for performance under

24  the parties' agreement.").[10]

25  _____

26  [10] *Accord Benson v. Citibank, N.A.*, 2013 WL 1703380 *4 (N.D. Cal. Apr. 19, 2013)
    ("A claim for promissory estoppel is not viable where the action taken in reliance on
27  the promise to hold off on a foreclosure was nothing more than the borrower's
    agreement to resume making payments on the promissory note.").

28

                                            12

1        As an initial matter, Plaintiff cannot state a claim for promissory estoppel

2   because he alleges a bargained-for agreement exchanged for consideration.  Here,

3   Plaintiff alleges that he exchanged proper consideration i.e., that Plaintiff would pay

4   the outstanding arrearages, for Defendants' alleged promise not to foreclose.

5   Accordingly, Plaintiff's claim for promissory estoppel must fail.

6               **2.      Plaintiff fails to plead a clear and unambiguous promise**

7        Plaintiff also fails to allege a promise clear and unambiguous in its terms.

8   Here, Plaintiff is not even certain whether he agreed to only pay $30,000 in exchange

9   for Defendants alleged promise not to foreclose, or whether he was obligated to pay

10  $44,000 ($30,000 lump sum payment and $14,000 outstanding arrearages).[11] And

11  even assuming the latter, Plaintiff does not even allege that he performed on the loan

12  - namely, that he paid the additional $14,000 in outstanding arrearages.  Nor does

13  Plaintiff allege what exactly was promised by Defendants.  Plaintiff alleges in one

14  instance that Defendants promised "not to initiate foreclosure proceedings"

15  (Complaint, ¶15); but later in the Complaint, he claims that Defendants promised

16  "his home would not be foreclosed upon ***and that he would obtain a loan***

17  ***modification***," (Complaint, ¶¶71, 72).  The material terms of the agreement are

18  simply unclear.[12]

19  _____

20  [11] *Compare* ¶15 ("Plaintiff agreed that…Plaintiff would make a $30,000 payment
    .…***The agreement further required that the payment of the outstanding arrears of***
21  ***$14,000.00*** would be paid-off … from August 2012 to February 2013.…In exchange
    for Plaintiff's ***payments,*** Defendant Aurora agreed that it would not initiate
22  foreclosure proceedings upon the home."), *with* ¶70 ("Defendants clearly promised
    Plaintiff that if he furnished 30,000 dollars, his home would not be foreclosed upon
23  and that he would obtain a loan modification."). (emphasis added).

24  [12] The ambiguity is not surprising given that Plaintiff fails to plead that there was any
    written documents or materials memorializing the terms and provisions of the
25  agreement.  Indeed, Plaintiff can only point to two checks worth $30,000 that were
    allegedly credited to Aurora's account in support of his allegations.  However, the
26  two checks merely show that he made an overdue payment of outstanding arrearages
    pursuant to the original loan agreement; it does not demonstrate that Defendants
27  offered any promise in exchange, let alone, a promise not to foreclose and modify his
    loan.

28

13

GREEN & HALL
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

### 3.   **Plaintiff fails to plead detrimental reliance**

Plaintiff also fails to allege that he detrimentally relied on Defendants' promise by: (i) selling his car to pay $30,000 in arrearages, and (ii) not seeking "alternative means to save his home." ¶¶72, 73 at p. 19.  To start, the $30,000 was admittedly money already over-due and that Plaintiff was obligated to pay regardless of any promise made by Defendants.  *See Perez v. Wells Fargo Bank, N.A.*, 2011 WL 3809808 *21 (N.D. Cal. Aug. 29, 2011) ("Because Plaintiffs were already obligated to make payments under the Loan Agreement, they have not alleged any facts showing reliance that was detrimental.").  Further, Plaintiff does not allege how he was prevented from exploring other alternatives and what alternatives Plaintiff purportedly lost as result of Defendants' alleged promise.  Indeed, contrary to his assertions, Plaintiff ***did*** explore alternative means to save his home, including a loan modification that was approved by Nationstar and Plaintiff apparently rejected.  ¶26.

### 4.   **Plaintiff fails to plead injury**

Finally, Plaintiff also fails to plead injury, i.e., an "irremediable change of position ... in reliance upon the [defendant's] promise." *Scales v. First Horizon Home Loans*, 2012 WL 531022 *3 (E.D. Cal. Feb. 17, 2012).  Here, there was no irremediable change of position as Plaintiff admits he was offered a loan modification to retain possession of the Property. ¶26.  Moreover, Plaintiff was aware that Defendants had no record of the alleged agreement as early as August 2012 (¶21); thus, he had several months to explore alternative means to finance his home.  But instead, Plaintiff elected to sell the Property for over $200,000 in profit.[13]

---

[13] Nor did Defendants renege on the alleged promise not to foreclose - the Property was not foreclosed on, but rather sold voluntarily by Plaintiff.  *See Penney v. NDEX W. LLC*, 2013 WL 569176 *5 (C.D. Cal. Feb. 13, 2013) (determining no breach of alleged promise not to refer mortgage to foreclosure during pendency of loan modification review because "no sale was ever held until … after [plaintiff's] HAMP request was denied").

14

GREEN & HALL
ATTORNEYS AT LAW

### F. <u>Plaintiff Fails to State a Claim for Promissory Fraud</u>

Plaintiff claims that Defendants committed promissory fraud by misrepresenting that they would not foreclose on the Property if he paid $30,000 in outstanding arrearages.  ¶¶59-65 at pp.16-18.  Promissory fraud is a subspecies of an action for fraud and deceit.  *Rossberg v. Bank of Am., N.A.*, 219 Cal. App. 4th 1481, 1498 (2013).  In order to state a claim for promissory fraud under California law, a plaintiff must allege: "(1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise[e]."  *Id.*  A plaintiff must "establish a ***complete*** causal relationship" between the alleged fraud and the harm claimed to have resulted therefrom.  *Id.* at 1499 (emphasis added).   In fact, "[a]ssuming ... a claimant's reliance on the actionable misrepresentation, no liability attaches if the damages sustained were otherwise inevitable or due to ***unrelated causes***."  *Id.* (emphasis original).  "A claim for promissory fraud must meet the heightened Fed. Rule Civ. Proc. 9(b) pleading standard," and ***must be pled with specificity***.  *See Singh v. Wells Fargo Bank*, 2011 WL 66167 *8 (E.D. Cal. Jan. 7, 2011).

<u>**First**</u>, Plaintiff fails to plead with any specificity that Defendants made any promise ***with the intent not to perform***.  In fact, as detailed *supra*,  Plaintiff does not even adequately allege what was exactly promised, nor is there any indication that Aurora had any intent to foreclose on the Property at the time the promise was purportedly made.  At most, Plaintiff alleges that Nationstar reneged on the promise months after the promise was allegedly made, not that Aurora never had any intention not to perform ***at the time it allegedly made the promise***.

<u>**Second**</u>, as detailed *supra*, Plaintiff fails to allege ***with specificity a complete causal connection*** between Defendants' alleged misrepresentation and his illusory

15

1   damages.  Plaintiff claims that Defendants' promise not to foreclose on the Property

2   led to him "losing his home in a foreclosure sale" "at a price much lower for which

3   he had purchased the home."  ¶65 at p.18.  However, Plaintiff did not lose his home

4   in a foreclosure sale; he voluntarily sold his home to pay his mortgage debt and

5   profited to the tune of over $200,000.  Defendants had no involvement in the listing

6   or sale of the Property, let alone, the ultimate sales price.  Moreover, it was

7   Plaintiff's admitted loan default that created the risk of foreclosure, and Plaintiff

8   apparently rejected a loan modification offer from Nationstar that would have kept

9   him in his home.  As such, Plaintiff cannot establish a *complete* causal connection.

10   **Third**, Plaintiff fails to allege with specificity nonperformance by Defendants

11   because ***Defendants did not foreclose on the Property*** as they had allegedly

12   promised.  Plaintiff fails to state a claim for relief for Promissory Fraud.

13          **G.**   **Plaintiff Fails to State a Claim for Breach of Contract**

14   Plaintiff's breach of contract is premised on his erroneous contention that

15   Defendants foreclosed on his home.  ¶91.  To state a claim for breach of contract, a

16   plaintiff must plead: "(1) a contract existed; (2) the plaintiff performed his duties or

17   was excused from performing his duties under the contract; (3) the defendant

18   breached the contract; and (4) the plaintiff suffered damages as a result of that

19   breach."  *First Commercial Mortgage Co. v. Reece,* 89 Cal.App.4th 731, 745, 108

20   Cal.Rptr.2d 23 (2001).  "Facts alleging a breach, like all essential elements of a

21   breach of contract cause of action, must be pleaded ***with specificity***."  *Graybill v.*

22   *Wells Fargo Bank, N.A.*, 2013 WL 978245 *13 (N.D. Cal. Mar. 12, 2013) (emphasis

23   added).  Plaintiff fails to adequately plead any of the elements.

24   **First**, Plaintiff fails to plead with specificity the existence of an enforceable

25   contract under which Defendants agreed to grant Plaintiff a loan modification and

26   not foreclose on the Property.  To the contrary, the Deed of Trust expressly provides

27   for a power of sale in the event of Plaintiff's loan default.  *See* Complaint,

28   Exhibit "A" ("Borrower irrevocably grants and conveys to Trustee, in trust, with

16

1   power of sale, the following described property …").  In fact, as discussed *supra*,

2   Plaintiff cannot even identify with any clarity the material terms of the alleged

3   contract.

4        Moreover, to the extent Plaintiff contends that the alleged breached "contract"

5   was an oral agreement to modify the terms of the parties original loan agreement, the

6   claim must also fail under the statute of frauds.  *See e.g., Lester v. J.P. Morgan*

7   *Chase Bank*, 2013 WL 3146790 *8 (N.D. Cal. June 18, 2013) (determining claim

8   based on "verbal loan modification contract" fails because the alleged promise to

9   modify the plaintiff's original loan is subject to statute of frauds); *Dooms v. Fed.*

10  *Home Loan Mortgage Corp.*, 2011 WL 1303272 *5, 6 (E.D. Cal. Mar. 31, 2011)

11  (statute of frauds bars the breach of contract claim alleging oral agreement to modify

12  loan); *Justo v. Indymac Bancorp*, 2010 WL 623715 *7 (C.D. Cal. Feb. 19, 2010)

13  (breach of contract allegation that "defendants breached an oral contract to modify

14  his loan and cancel the foreclosure sale on his home" barred by statute of frauds).

15       **Second**, Plaintiff does not allege that he fully performed his duties under the

16  alleged contract.  In particular, Plaintiff claims that Aurora promised to foreclose on

17  the Property if he made a payment of $30,000 by June 2012, ***and paid $14,000 from***

18  ***August 2012 to February 2013***.  ¶15.  However, Plaintiff does not allege that he ever

19  paid the $14,000 owed under the alleged agreement.

20       **Third**, Plaintiff fails to allege any breach.  As Plaintiff admits, Defendants did

21  not foreclose on the Property; it was voluntarily sold by Plaintiff for a significant

22  profit.  ¶27.  Moreover, Plaintiff acknowledges that he was offered a loan

23  modification (which he rejected) as was allegedly promised. ¶26.

24       **Fourth**, Plaintiff fails to allege ***with specificity*** any damages.  Plaintiff offers

25  mere labels and conclusions that he suffered "general and special <u>damages</u>" and

26  "severe emotional distress."  These conclusory allegations are wholly insufficient to

27  state a claim for breach of contract.

28

GREEN & HALL
ATTORNEYS AT LAW

**H.**   **Plaintiff Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiff alleges that Defendants "did not act in good faith and did not deal fairly with Plaintiff in connection with their loan modification agreement." ¶85.  To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege: 1) the existence of the contract; 2) performance by the plaintiff or excuse for nonperformance; 3) breach by the defendant; and 4) damages.  *First Commercial Mortgage Co. v. Reece,* 89 Cal.App.4th 731, 745, 108 Cal.Rptr.2d 23 (2001).  Because the covenant of good faith and fair dealing is an implied term arising out of a contract, "[t]he existence of a contractual relationship is thus a prerequisite for any action for breach of the covenant."  *Kim v. Regents of Univ. of Cal.*, 80 Cal.4th 160, 164 (2000).  Like a breach of contract claim, a claim for breach of the covenant of good faith and fair dealing must be alleged ***with specificity***.  *See Perez*, 2011 WL 3809808 at *18.

Plaintiff's claim for implied covenant of good faith and fair dealing fails for the same reasons as his breach of contract claim.  As illustrated *supra* in Section III.G., Plaintiff fails to identify a contract from which the implied covenant arose.  *See Perez*, 2011 WL 3809808 at *18 (dismissing claim for breach of implied covenant of good faith because the plaintiffs failed to identify the specific contractual provision the defendants allegedly frustrated ).[14]  In fact, the only discernible agreement pled by Plaintiff is a purported verbal agreement that is unenforceable under the statute of frauds.  *See Justo*, 2010 WL 623715 at *7 ("Because the alleged oral contract is unenforceable under the statute of frauds, Plaintiffs' breach of implied covenant claim fails with respect to that contract.").  Nor can Plaintiff allege a breach

---

[14] *See also Lee v. Aurora Loan Servs.*, 2010 WL 1999590 *5 (N.D. Cal. May 18, 2010) (dismissing claim for breach of covenant of good faith because the plaintiff neither alleged the existence of a contract nor "any express contractual obligation requiring the negotiation of a modification of the loan").

18

1    of the contract under the original loan agreement because the Deed of Trust expressly

2    permits foreclosure. *Id.* at *7.[15]  The Court should dismiss Plaintiff's claim on this

3    basis alone.

4          Plaintiff also fails to allege a "special relationship" between Plaintiff and

5    Defendants – a prerequisite to state a claim for breach of the implied covenant of

6    good faith and fair dealing. "Under California law, no cause of action for the tortious

7    breach of the implied covenant of good faith and fair dealing can arise unless the

8    parties are in a 'special relationship' with 'fiduciary characteristics.'"  *Lingad v.*

9    *Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1154 (E.D. Cal. 2010).  Plaintiff fails to

10   allege any facts or offer any authority that supports the existence of a fiduciary

11   relationship between Plaintiff and Defendants.  In fact, it cannot be disputed that the

12   relationship between Defendants and Plaintiff was strictly that of a lender and

13   borrower, and there was no special relationship or fiduciary duties that neither

14   Aurora nor Nationstar owed to Plaintiff that would give rise to a claim for breach of

15   the implied covenant of good faith and fair dealing.  *See Boatright*, 2012 WL

16   2792415 at *13 (because the relationship between "Plaintiff and Defendants is that of

17   lender and borrower, it is unlikely that California law would uphold a claim for

18   breach of the covenant of good faith and fair dealing").[16]  Accordingly, Plaintiff fails

19   to state a claim for violation of the implied covenant of good faith and fair dealing.

20   **I.**     **Plaintiff Fails to State a Claim for Intentional Infliction of**

21            **Emotional Distress**

22          Plaintiff alleges that Defendants' purported mismanagement of his loan

23   modification application and foreclosure of the Property caused him "severe

24   _____

25   [15] *See also Morgan*, 2013 WL 3448552 at *9 ("a court may not imply a covenant of
     good faith and fair dealing which contradicts the express terms of a contract").

26   [16] *See also Dorado v. Shea Homes Ltd. P'ship*, 2011 WL 3875626 *7 (E.D. Cal. Aug.
27   31, 2011) (dismissing breach of implied covenant claims because "there is no special
     relationship between a lender and borrower").

28

GREEN & HALL
ATTORNEYS AT LAW

19

1    emotional distress." ¶¶96-103.  Under California law, to plead a claim for

2    Intentional Infliction of Emotional Distress ("IIED"), a plaintiff must allege:

3    (i) extreme and outrageous conduct; (ii) severe or extreme emotional distress

4    suffered by the plaintiff; and (iii) actual and proximate causation.  *Ross v. Creel*

5    *Printing & Publ'g Co.* (2002) 100 Cal. App. 4th 736, 744-45.  "Conduct to be

6    outrageous must be so extreme as to exceed all bounds of that usually tolerated in a

7    civilized community."  *Id.*  An action taken by a defendant in good faith to assert its

8    economic interest is privileged, even if it causes emotional distress.  *Id.* at 745 n. 4;

9    *accord Karimi v. Wells Fargo*, 2011 WL 10653746 *2 (C.D. Cal. May 4, 2011).  In

10   cases involving a debtor and creditor, the creditor enjoys a qualified privilege with

11   respect to debt collection activities and is only liable if the creditor uses "outrageous

12   and unreasonable means in seeking payment."  *Ross*, 100 Cal. App. 4th at 745 n. 4.

13         Plaintiff cannot show that Defendants' review of his loan modification

14   application and alleged foreclosure qualifies as extreme or outrageous conduct.  To

15   start, Plaintiff does not even allege *how* Defendants failed to "handle and maintain

16   each of his documents with reasonable care." ¶97.  Plaintiff merely claims in

17   conclusory fashion that he was required to resubmit documents (¶97), which hardly

18   qualifies as conduct that exceeds all levels of decency.

19         Nor can Plaintiff plead an IIED claim based on the alleged foreclosure of his

20   home.  As discussed above, the Property was not foreclosed on; Plaintiff voluntarily

21   sold the Property at a significant profit.  Moreover, even if Defendants had

22   foreclosed on the Property, Plaintiff still could not state a claim.  As courts in the

23   Ninth Circuit have recognized, the act of foreclosing on a property does not rise to

24   the level of extreme or outrageous conduct to support an IIED claim, ***"even when the***

25   ***mortgage company has orally promised not to foreclose."*** *Karimi*, 2011 WL

26

27

28

1  10653746 at *2.[17]   Plaintiff simply fails to allege any non-privileged conduct or facts

2  that show Defendants engaged in extreme or outrageous conduct.[18]

3       Next, the Complaint is devoid of any allegations that Defendants acted with

4  the intent to cause severe emotional distress.  Aside from his false contention that

5  Defendants foreclosed on the Property, Plaintiff provides no facts that Defendants'

6  actions were intentionally calculated to inflict severe emotional distress on Plaintiff.

7  To the contrary, Plaintiff acknowledges that Nationstar provided him an opportunity

8  to retain his home by offering a loan modification which he rejected.  ¶26.

9       Finally, although Plaintiff claims to have suffered "severe emotional distress"

10  throughout his Complaint, he fails to allege any facts that bear on the extent and

11  severity of his damages, or how Defendants actions caused these illusory damages.

12  *See Chan Tang v. Bank of Am., N.A.*, 2012 WL 960373 *16 (C.D. Cal. Mar. 19,

13  2012) (dismissing with prejudice IIED claim where the plaintiffs failed to show how

14  the defendants' foreclosure activities caused them to incur the amount of damages

15  alleged in their complaint).  For example, it is difficult to comprehend how Plaintiff

16  lives "[in] fear that his family will soon be evicted from their home," when Plaintiff

17  voluntarily sold and relinquished title to his home.  ¶100.[19]  Indeed, it is not apparent

18  _____

19  [17] *See also Justo*, 2010 WL 623715 at *10 (dismissing IIED claim with prejudice
    because alleged misrepresentation regarding loan modification approval "simply
20  do[es] not rise to the level of 'extreme and outrageous conduct.'"); *Quinteros v.
    Aurora Loan Servs.*, 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010) ("The act of
21  foreclosing on a home (absent other circumstances) is not the kind of extreme
    conduct that supports an intentional infliction of emotional distress claim."); *Mehta
22  v. Wells Fargo Bank, N.A.,* 737 F.Supp.2d 1185, 1204 (S.D.Cal.2010) (same).

23  [18] *See Nugent*, 2013 WL 1326425 at *10 (the plaintiffs failed to state claim for relief
    for IIED because the complaint describes "a creditor/debtor situation, whereby the
24  defendants were exercising their rights under the loan agreements. There are no
    allegations that in conducting the foreclosure proceedings any of the [D]efendants
25  threatened, insulted, abused or humiliated the [Plaintiffs].").

26  [19] More so, the Property *is only one of three homes* that Plaintiff owns.  *See
    Complaint, Ex. "M", "Making Home Affordable Program, Request for Mortgage
27  Assistance Form " at p.6 (listing two other properties in Albuquerque, New Mexico
    owned by Plaintiff).

28

GREEN & HALL
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1 | from the Complaint that Plaintiff incurred any harm above and beyond the distress

2 | that naturally flows and is inherent in addressing debt obligations and modifying a

3 | loan.  The Complaint is devoid of any facts that show Plaintiff suffered severe

4 | emotional distress, and his conclusory assertions otherwise are insufficient to meet

5 | the requisite pleading standards.

6 | **J.**     **Plaintiff Fails to State a Claim for Violation of the UCL**

7 |     Plaintiff alleges that Defendants engaged in "unfair," "unlawful," and

8 | "fraudulent" in violation of the UCL.  ¶¶105-147.

9 | **1.**     **Plaintiff does not have standing to bring a UCL claim.**

10 |     A plaintiff may only bring a claim under the UCL if he "has suffered injury in

11 | fact and has lost money or property as a result of the unfair competition." Cal. Bus.

12 | & Prof.Code § 17204.

13 |     Here, Plaintiff fails to demonstrate that he has suffered an "injury in fact" or

14 | that the alleged injury was caused by Defendants. As described *supra*, Defendants

15 | did not cause Plaintiff to lose his home, Plaintiff voluntarily sold the Property. Even

16 | assuming *arguendo* that Defendants somehow foreclosed on the Property (which

17 | they did not), Plaintiff still does not have standing under the UCL because his loan

18 | default created the risk of foreclosure, not Defendants' alleged subsequent

19 | wrongdoing.  *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497,

20 | 522-23 (plaintiff failed to plead causal link between impending nonjudicial

21 | foreclosure and defendants' misconduct because plaintiff's admitted "default

22 | triggered the lawful enforcement of the power of sale clause in the deed of trust, and

23 | it was the triggering of the power of sale clause that subjected Jenkins's home to

24 | nonjudicial foreclosure").  Finally, Plaintiff's claim that he suffered injury to his

25 | credit, severe emotional distress, and inability to secure a loan modification or

26 | refinance his property are either false or wholly conclusory and insufficient to plead

27 | an injury in fact.

28 |

GREEN & HALL
ATTORNEYS AT LAW

1          **2.      Plaintiff fails to allege a violation of the "unlawful" prong**.

2          In order to state a claim under the "unlawful" prong of the UCL, a plaintiff

3   must allege with particularity a violation of an underlying law or statute.  *Cel–Tech*

4   *Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.* 20 Cal.4th 163, 180 (1999).

5   As described *supra*, Plaintiff fails to allege any predicate violation of law; thus he

6   cannot plead a UCL claim under the "unlawful" prong.

7          **3.      Plaintiff fails to allege a violation of the "fraudulent" prong**

8          In order to state a claim under the "fraudulent" prong of the UCL, a plaintiff

9   must allege with particularity that the defendant engaged in business practices that

10  are likely to deceive members of the public.  *Morgan v. AT & T Wireless Servs., Inc.,*

11  177 Cal. App. 4th 1235, 1255 (2009)  Violations that sound in fraud must pled with

12  particularity and meet the heightened pleading requirements under Rule 9(b).

13  *Alvarado*, 2012 WL 4475330 at *7.  Here, Plaintiff fails to plead with particularity

14  any set of facts that show Defendants engaged in any conduct that is likely to deceive

15  the public.  Plaintiff reiterates his factually incorrect theory that Defendants delayed

16  the loan modification process, falsely promised him that he would receive a

17  permanent loan modification, and foreclosed on the Property.  ¶¶130, 131, 133.  To

18  the contrary,  Plaintiff was reviewed for and offered a loan modification by

19  Nationstar, and Defendants never foreclosed on the Property.  Plaintiff's UCL claim

20  under the "fraudulent" prong must fail.

21         **4.      Plaintiff fails to allege a violation of the "unfair" prong**

22         In order to state a claim under the "unfair" prong of the UCL, a plaintiff must

23  allege with particularity that the defendant engaged in business practices that

24  "offend[] an established public policy" or that "is immoral, unethical, oppressive,

25  unscrupulous or substantially injurious to customers."  *Paduano v. American Honda*

26  *Motor Co., Inc.,*169 Cal.App.4th 1453, 1469 (2009).

27         Plaintiff's allegations are borderline unintelligible and do not even come

28  remotely close to alleging "unfair" business practices.  Specifically, Plaintiff claims

1  that Defendants' "misconduct…gave them an unfair advantage over their

2  competitors." ¶¶138, 140.  Plaintiff does not identify the "competitors" which he

3  references, the alleged unfair conduct, and how Plaintiff has any standing to recover

4  on behalf of these unidentified "competitors."  To the extent Plaintiff's claim for

5  unfair practices is based on Defendants' alleged promise not to foreclose, Plaintiff's

6  allegations fail for the reasons illustrated *supra* - namely, that Defendants never

7  foreclosed on the home and offered Plaintiff a loan modification that would have

8  allowed Plaintiff to remain in his home.

9  **K.    Plaintiff Fails to State a Legally Cognizable Quiet Title Action**

10  Plaintiff, again, erroneously alleges that his home was "wrongfully foreclosed

11  on" (¶150) and requests that the Court quiet title to the Property against Defendants

12  "as of the date of [the] complaint."  ¶151.  A plaintiff seeking to quiet title must

13  plead an interest in the property that is adverse to his or her own.  *Mehta*, 737 F.

14  Supp. 2d at 1206.  Defendants are confused as to this request for relief. Here,

15  Defendants do not hold any adverse interest in the Property because it does not hold

16  title to the Property;  Plaintiff sold and transferred title of the Property to a third-

17  party purchaser.[20]  Indeed, Defendants never had anything more than a security

18  interest in the Property which is not an adverse claim to the Property.  *Velasco v.*

19  *Homewide Lending Corp.*, 2013 WL 3188854 *3 (C.D. Cal. June 21, 2013) ("[a]

20  security interest in a deed of trust is not an adverse claim to a plaintiff's property").

21  The Court should deny Plaintiff's request to quiet title against Defendants.

22

23

24

25  —————————————

26  [20] A quiet title action would still be inappropriate even if the Property was sold at a
   trustee sale (which it was not).  *See Outten v. Bank of New York Mellon*, 2013 WL

27  6086899 *2 (C.D. Cal. Nov. 18, 2013) ("[B]ecause the property has already been
   sold, quiet title is no longer an appropriate action to seek to undo the foreclosure.").

28

24

**L.      The Court Should Dismiss the Complaint With Prejudice and Without Leave to Amend**

The Court should dismiss the Action with prejudice and without leave to amend.  Courts have discretion to deny leave to amend if it determines that the pleading could not possibly be cured by the allegation of other facts.  *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).  Here, the Complaint does not fail for lack of specificity or detail; it fails because the facts alleged do not give rise to any legal claim rendering amendment futile.  The thrust of Plaintiff's claims are premised on his contradicting and erroneous allegations that Defendants foreclosed on the Property and that Defendants somehow caused Plaintiff to lose his home.  Plaintiff's allegations are simply untrue.  Plaintiff was offered a loan modification, which he apparently rejected, and he, thereafter, voluntarily sold his home at a substantial profit to pay his delinquent mortgage.  Further, many of Plaintiff's claims are facially unsalvageable. For instance, Plaintiff brings claims based on statutes that were not even in effect at the time of the alleged misconduct (e.g., HBOR), and seeks to quiet title against Defendants who do not have any adverse claim to the Property. Accordingly, Plaintiff's claims should be dismissed with prejudice.

**IV.    CONCLUSION**

For the reasons set forth herein, Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety, with prejudice.

Dated:  December 9, 2013

GREEN & HALL, A PROFESSIONAL CORPORATION


By:  /s/ Kevin S. Kim
      Howard D. Hall, Esq.
      Kevin S. Kim, Esq.
Attorneys for Defendants
NATIONSTAR MORTGAGE LLC and
AURORA LOAN SERVICES, LLC

25