1 | Stuart Simone, Esq.  (SBN 269830)
Mark Gomez, Esq.    (SBN 289164)
2 | GOMEZ & SIMONE LLC
450 N. Brand Blvd., Suite 600
3 | Glendale, CA 91203
Telephone: (888) 421-8863
4 | Facsimile: (818) 547-6730
5
Attorneys for Plaintiff, Eduardo Sanchez
6
7
8 | **UNITED STATES DISTRICT COURT**
9 | **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**
10

| | |
|---|---|
| EDUARDO SANCHEZ, *an individual;*<br><br>        Plaintiff,<br><br>vs.<br><br>AURORA BANK, FSB; AURORA LOAN SERVICES, LLC; NATIONSTAR MORTGAGE LLC; and Does 1-10, inclusive.<br><br>        Defendants. | Case No.: 2:13-cv-08846-mmm-rz_<br><br>Assigned to the Hon. Margaret Morrow<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:  March 10, 2014<br>Time:  10:00 a.m.<br>Ctrm:  780<br><br>Complaint Filed: September 17, 2013 |

TO THE HONORABLE MARGARET MORROW AND DEFENDANTS AND THEIR

COUNSEL OF RECORD:

Plaintiff submits this memorandum in opposition to Defendants' Motion to Dismiss.

Plaintiff respectfully submits that this motion should be denied or in the alternative, should

the Court find the Complaint lacking in any manner, that leave to amend be granted.

///

-i-

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 2

II.     FACTUAL BACKGROUND ...................................................................................... 3

III.    ARGUMENT ............................................................................................................... 6

  A. Standard of Review ...................................................................................................... 6

  B. Plaintiff's HBOR Claim is Legally Justified ............................................................... 7

  C. Plaintiff's Claim for Violation of 2923.4 and 2932.5 is Legally Justified ...................... 9

  D. Plaintiff's Claim for Negligence is Legally Justified ................................................... 10

  E. Plaintiff's Claim for Promissory Fraud is Legally Justified ......................................... 12

  F. Plaintiff's Claim for Promissory Estoppel .................................................................... 13

  G. Plaintiffs' Claim for Breach of Implied Covenant of Good Faith and Fair Dealing is
Legally Justified ................................................................................................................ 14

  H. Plaintiffs' Claim for Breach of Contract is Legally Justified ...................................... 15

  I.  Plaintiffs' Claim for IIED is Legally Justified ............................................................ 16

  J. Plaintiffs' Claim for Violation of California Business and Professions Code 17200 is
Sufficiently Pled ............................................................................................................... 17

IV.     CONCLUSION .......................................................................................................... 14

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

## Cases

*Advanced Choices, Inc. v. State Dept. of Health Services* (2010) 182 Cal.App.4[th] 161, 1672.)..........12

*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673....................................9

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007)............................................6

*Cabrera v. Countrywide Fin.*, 2012 WL 5372116) (N.D. Cal. Oct. 30, 2012.....................................16

*Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)...........................................5

*Chelini v. Nieri* (1948) 32 Cal.2d 480, 487........................................................11

*Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99...................................................5

*CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008)....................................14

*Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838)(2006)................................16

*Ellis v. JP Morgan Chase Bank, N.A.*, 2013 WL 2921799 at 17) (N.D. Cal. June 13, 2013).............17

*Haroutunian v. GMAC Mortg., LLC.*, 2013 WL 6687158 (Cal. Ct. App. Dec. 19, 2013)..................12

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).................................................6

*Johnson v. Knowles*, 113 F.3d 1114....................................................................5

*Jolly v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 907-02 (2012)...................................2

*KOVR-TV, Inc. v. Super. Ct.*, 31 Cal. App. 4th 1023, 37 Cal. Rptr. 2d 431 (Cal. Ct. App. 1995)......15

*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 ................................................9

*Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)..........................................5

*Lueras v. BAC Home Loans Servicing, LP* (2013), 221 Cal.App.4[th] 49, 67-68..............................10

*MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)....................................6

*Patriot Scientific Corp. v. Korodi*, S.D.Cal.2007, 504 F.Supp.2d 952......................................12

*Stevens v. Sup. Ct. (API Auto Ins. Services)* (1990) 75 Cal. App 4th 594, 601.).................................1

*Tenzer v. Superscope* (1985) 39 Cal.3d 18, 29........................................................11

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).............5

*Tyler v. Cisneros*, 136 F.3d 603, 607 (9th Cir. 1998)...................................................5

*Union Flower Market, Ltd. v. Southern California Flower Market, Inc.* (1938) 10 Cal.2d 671........11

*West v. JP Morgan Chase Bank N.A.*, 214 Cal. App. 4th 780, 805 (2013).........................................16

**Statutes**

Bus. & Prof. Code §17200 ................................................................................................ 2

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 6

Code Civ. Proc., §2923.5 ................................................................................................ 9

Fed. R. Civ. P. 8(f) ......................................................................................................... 7

Homeowners' Bill of Rights ........................................................................................... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff submits this memorandum of law in opposition to defendants' motion to dismiss a lawsuit necessitated by defendants calculated and cynical conduct. The Complaint sets out detailed conduct that goes beyond that of a traditional lender of money, and in violation of California Law.   Defendants' Motion, at best, fails to address the fundamental allegations of Plaintiff's complaint.   Contrary to Defendants' sentiments throughout their motion to dismiss, Plaintiff did not set out to sell his home at a profit, but rather to keep the home for his family.

Defendants belabor their position that they do not have a legal duty of care and that Plaintiff has suffered no real damages as a result of their conduct. Do defendants contend that they acted fairly? Or that their actions have not caused Plaintiff any harm?  Such contentions are the very reason the housing market has suffered and banks, such as Defendants, have faced a multitude of civil actions by Homeowners and even attorney generals of nearly every state in the Union.

Plaintiff has not unilaterally placed himself in this position, and in fact Plaintiff's currently perilous predicament is due to the callous actions of Defendants, and each of them. In 2010, Plaintiff reached out to Defendants for assistance and the hope of keeping his family in their home. Defendants, however, had other plans. Defendants violated California unfair competition law ("UCL" -- Bus. & Prof. Code §17200 *et seq.*), and numerous other laws, with their unfair, unlawful and fraudulent business scheme of drawing out a large payment by Plaintiff, under the premise that such would protect his home, and thereafter proceeding with the foreclosure process. Moreover, in an attempt to hinder Plaintiff from taking advantage of other foreclosure prevention alternatives, Defendants granted Plaintiff a loan modification shortly after Christmas 2012 and provided him with just three (3) days to return the paperwork. An impossible feat at the very best.

There is a well-documented history of Defendants engaging in these exact types of unfair, unlawful and fraudulent business practices, and Plaintiff, like so many other

1   homeowners who are serviced by Defendants, has fallen victim to Defendants' deceptive and
2   illegal business schemes.  The California Court of Appeals recently noted that the practice of
3   dual tracking, even before HBOR became effective, could violate the UCL:  "[W]hile dual
4   tracking may not have been  forbidden by statute at the time, the new legislation and its
5   legislative history may still contribute to its being considered 'unfair' for purposes of the
6   UCL." *Jolly v. Chase Home Fin., LLC,* 213 Cal. App. 4th 872, 907-02 (2012).

7       In addition to violating the HBOR and the UCL, Defendants have violated other
8   California statutory and common laws, and as such, equity implores that Defendants are held
9   accountable for their actions.

10   ## II.  FACTUAL BACKGROUND

11       Due to the economic climate on or about the year 2012, Plaintiff, like most of the
12   homeowners during that time, had difficulty making his payments to Defendants. Earlier,
13   Plaintiff had appealed to Defendant, AURORA, for options in lieu of foreclosure including but
14   not limited to, loan modification. Plaintiff was in constant contact with Defendant, AURORA,
15   and on June 20, 2011 sent in financial documents to Defendant's loan mitigation department,
16   as requested by Defendant. (Complaint ¶ 13).

17       In the course of a year, Plaintiff submitted copious financial documents to Defendant,
18   AURORA, including, bank statements, profit and loss statements, mortgage statements, and
19   lease agreements. Plaintiff's loan modification negotiations with Defendant, AURORA,
20   culminated in May of 2012 when Plaintiff and AURORA entered into an agreement to place
21   Plaintiff on a repayment plan.  Plaintiff and Defendant's agent, Catalina Santiago, agreed that
22   Plaintiff would make a $30,000.00 payment to Defendant by June 1, 2012.  The agreement
23   further required that the payment of the outstanding arrears of $14,000.00 would be paid-off by
24   Defendant from August 2012 to February 2013. In exchange for Plaintiff's payments,
25   Defendant AURORA agreed that it would not initiate foreclosure proceedings upon the home.
26   (Compl. ¶ 15)

27       Plaintiff expended considerable effort to finance the substantial $30,000.00 payment and
28   even sold his vehicle to ensure he had a sufficient amount.  Plaintiff executed two cashier's

-3-

checks in the amount of $22,500.00 and $7,500.00 dated May 18, 2012 and May 29, 2012, respectively, made payable to AURORA BANK, which were duly given to Defendant, AURORA before the June 1, 2012 deadline. In early June of 2012, Plaintiff went on a vacation with his family, and returned sometime in mid-June.   To Plaintiff's surprise, Defendant, AURORA had sent a letter to Plaintiff, on or about June 15, 2012, notifying him that the servicing of his loan was being transferred from Aurora Bank FSB to Defendant, Nationstar Mortgage LLC effective July 1, 2012. Specifically, both the Los Angeles National Bank and Wells Fargo Bank, N.A. verified that the cashier's check for $22,500.00 and $7,500.00 were credited to Defendant's account on June 15, 2012 and June 18, 2012, respectively. (Compl. ¶ 17)

The June 15, 2012 letter also assured Plaintiff that "Aurora Bank will be transferring all of your [Plaintiff's] documentation to Nationstar Mortgage LLC" and that all "approval decisions" regarding any possible "loss mitigation options" prior to the transfer date of July 1, 2012, would be made by Defendant, AURORA. Starting in July of 2012, Plaintiff made multiple calls to Defendant, Nationstar Mortgage, LLC, to determine whether they were aware of the previous agreement made with Aurora Bank, LLC and of the $30,000.00 payment. On July 31, 2012 at 2:15 pm Plaintiff finally reached an agent at NATIONSTAR agent, by calling (317) 806-7058 and spoke with, "Joyce", who would only provide her first name. (Compl. ¶ 18)

Joyce informed Plaintiff that she was the agent assigned to his file and confirmed that NATIONSSTAR was in receipt of the $30,000.00 payment from Plaintiff. Furthermore, Joyce informed Plaintiff that his file status was being reviewed and to wait two more weeks. Cognizant of the importance of Plaintiff's conversation with Joyce, Plaintiff quickly made a typed record of what had transpired. Sometime in mid-August, Plaintiff again called Defendant, NATIONSTAR, to inquire about the agreement made to AURORA, but, to Plaintiff's shock and dismay, Defendant, NATIONSTAR stated that they had absolutely no record of the previous agreements made between Plaintiff and Defendant, AURORA, nor any records of the $30,000.00 payment. (Compl. ¶ 21)

Defendant, NATIONSTAR, informed Plaintiff that his account was past-due in the amount of $69,000.00 dollars, which was not reflective of the $30,000.00 payment made to AURORA.   Just two weeks prior, NATIONSTAR's agent, Joyce, confirmed that NATIONSTAR was in receipt of Plaintiff's payment. Plaintiff worked tirelessly to determine why Defendant, NATIONSTAR, had no record of his transaction with AURORA, and sometime in 2012, spoke with an agent of NATIONSTAR. The agent confirmed that her name was Catalina Santiago, the same agent who worked for AURORA, and who helped facilitate Plaintiff's repayment plan.  Catalina remembered Plaintiff's account and the agreement that was entered into by Plaintiff and AURORA. (Compl. ¶ 22). Nevertheless, Catalina claimed that NATIONSTAR had no record of the payment or the agreement.  Concerned at the prospect of Plaintiff's property entering into foreclosure, he again commenced the loan modification process with NATIONSTAR, and submitted numerous documents. (Compl. ¶ 22)

At this point, Plaintiff was utterly frustrated with Defendants negligence in the handling of his account, and acquired the services of Neighborhood Partnership Housing Services, Inc. who helped Plaintiff with the loan modification process and the $30,000.00 payment made to AURORA. (Compl. ¶ 24) On or about November of 2012, Plaintiff was informed by, April Lyons, an agent of Defendant, NATIONSTAR, that she would put in a "Request for Payment History" in regards to the payment made to AURORA. The agent informed Plaintiff to call her back on the 13th of January. Thereafter, during the holidays, Plaintiff receives a letter from Defendants stating that Plaintiff has about three days to respond and accept the loan modification. (Compl. ¶ 26)  By giving Plaintiff only three days to respond during an already busy holiday season, Defendants clearly acted in bad faith and ill will, with the purpose of having Plaintiff proceed with foreclosure proceedings. As a consequence of Defendants' corrupt actions, Plaintiff was forced to rush to short sale his home far below market value.

The home eventually sold for 620,000 dollars when it was worth at least 750,000 dollars or more. (Compl. ¶ 24) In short, Defendants have made promises to Plaintiff and then reneged on those promises, strung him along all the while amassing considerable fees at his expense,

1 │ negligently mishandled his personal and financial information, caused him to lose his home,
2 │ and caused him stress to the point he has become unwell.

### III. ARGUMENT

#### A. Standard of Review

A complaint should not be dismissed for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997).

When the legal sufficiency of a complaint's allegations is tested with a motion under Rule 12(b)(6), "[r]eview is limited to the complaint." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). All factual allegations set forth in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). The Court must give the plaintiff the benefit of every inference that reasonably may be drawn from well-pleaded facts. *Tyler v. Cisneros*, 136 F.3d 603, 607 (9th Cir. 1998). "Denial of leave to amend 'is improper unless it is clear . . . that the complaint could not be saved by any amendment.'" *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004); *Center For Biological Diversity v. Veneman*, 394 F.3d 1108, 1109-1114 (9th Cir. 2005).

Generally, the Court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Rule 12(b)(6) expressly provides that "when matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." (Emphasis added.) Fed.R.Civ.P. 12(b)(6). There are, however, two exceptions to the requirement that consideration of extrinsic evidence converts a Rule 12(b)(6) motion to a motion for summary judgment. *Lee*, 250 F.3d at 688.

1   First, the Court "may consider material which is properly submitted as part of the

2   complaint on a motion to dismiss without converting the motion to dismiss into a motion for

3   summary judgment." Id. If the documents are not physically attached to the complaint, they

4   may be considered if the documents' authenticity is not contested and the plaintiff's complaint

5   necessarily relies on them. Id. at 689.

6   Second, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice

7   of "matters of public record" without converting a motion to dismiss into a motion for

8   summary judgment. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

9   However, the Court may not take judicial notice of a fact that is "subject to reasonable

10  dispute."

11  Defendants rely on the "plausibility standard" first articulated *in Bell Atlantic Corp. v.*

12  *Twombly*, 127 S. Ct. 1955 (2007). *Twombly* was an antitrust case alleging that local telephone

13  exchange carriers entered into a conspiracy both to prevent competitive entry into local

14  telephone and Internet service markets and to avoid competing with each other in their

15  respective markets. This matter is not analogous to *Twombly*.

16  In view of the "simple requirements of Rule 8(a)," the Court's task on a motion to

17  dismiss "is necessarily a limited one." *Swierkiewicz,* 534 U.S. at 511. "A court may dismiss a

18  complaint only if it is clear that no relief could be granted under any set of facts that could be

19  proved consistent with the allegations." *Id.* at 514. The court must construe the complaint in

20  the light most favorable to Plaintiffs and accept all of the factual allegations and permissible

21  inferences from the allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

22  Every complaint "shall be so construed as to do substantial justice." <u>Fed. R. Civ. P. 8(f).</u>

23  **B.    <u>Plaintiff's HBOR Claim is Legally Justified</u>**

24  Effective January 1, 2013, the Homeowners Bill of Rights modifies the non-judicial

25  foreclosure process by ensuring that specified borrowers who may qualify for a foreclosure

26  alternative "are considered for, and have a meaningful opportunity to obtain, available loss

27  mitigation options. . ."

28

Among the many protections provided by this statute are: (1) A ***single point of contact*** for "high volume" foreclosures, mortgage servicers conducting a large volume of residential foreclosures must assign each borrower a single point of contact to assist the borrower throughout the process; (2) ***No "dual tracking"*** of foreclosure and loan modification processes, non-judicial foreclosures may not proceed while borrowers have completed applications for foreclosure prevention alternative pending, or while borrowers are in compliance with approved modifications; (3) Private right of action, borrowers may bring suit against the mortgage servicers to enforce the statute before a foreclosure sale takes place, or to seek damages for violations after the sale.

As outlined in the Complaint, Defendants, who are undeniably involved in high volume foreclosures, failed to provide Plaintiff with any meaningful communication to assist him with potential options that may have avoided the foreclosure of his home. Defendants assert that Plaintiff is barred from bringing a HBOR claim because he fails to allege conduct in 2013. As set forth in Plaintiff's complaint, Defendants sent Plaintiff a letter in late December 2012 informing him that he was receiving a modification. Instead of providing Plaintiff with a reasonable amount of time to respond, Defendants required that Plaintiff review the paperwork, get it notarized, and return it to them within three (3) days. This is unreasonable regardless of the time of year, yet it must be noted that Defendants' actions occurred over the Christmas and New Year holidays. This is tantamount to not offering Plaintiff a modification at all. Clearly, Defendants actions with regards to Plaintiff's loan modification efforts spilled well into 2013. Nevertheless, Plaintiff was continuously and ruthlessly told that his home was going to be foreclosed on no matter what he did.

Defendants actions, as outlined in detail in the complaint, are the exact type of actions the legislature intended on protecting homeowner's against by enacting HBOR. Not only did Defendants bully Plaintiff into selling his home for far less that its true market value, but they intentionally induced him into paying $30,000.00 under the promise that he would keep his home.

### C.   Plaintiff's Claim for Violation of 2923.4 and 2932.5 is Legally Justified

Among the protections in this statute for borrowers in foreclosure is a mandatory notification, meeting, and consultation process that must be made available to the borrower by the foreclosing lender, mortgagee, trustee, beneficiary, or authorized agent, prior to filing a NOD under *Civil Code* §2924. The statute states that it is "modifying the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could *avoid* foreclosure." The intent of the legislature was to make sure that all homeowners are given a fair opportunity to explore mitigating options. Obviously, these contacts and communications must be made in good faith with the intent of providing the homeowner with all feasible options.

In the present case, from June 2011 until May 2012, it was consistently the Plaintiff who was in contact with Defendants; Defendants made no effort to contact Plaintiff and certainly did not provide a mandatory notification, meeting and consultation process prior to filing a NOD, whereby Plaintiff can communicate with Defendants and explore options that could avoid foreclosure, which is in clear violation of Civil Code Sections 2923.5 and § 2923.6.

Defendants ruthlessly claim that they provided Plaintiff with a modification, but that they didn't receive the documents back within the time frame allotted. They fail to mention, however, that the time frame provided was *only three (3) days*. It is difficult enough to send a letter across the city in three (3) days, not to mention across the country during the Christmas holiday.

Clearly, Plaintiff did not have a fair opportunity to take advantage of the opportunities that were admittedly available to him. Would it have destroyed Defendants' bottom line to extend the deadline a few days in light of the holiday season? Defendants had already coerced Plaintiff to make a lump sum $30,000.00 payment, and now they were providing him with a modification that was impossible to accept. A simple and easy decision to extend the deadline could have rendered this lawsuit unnecessary, as Plaintiff would undoubtedly be living in the home and making payments under the modified loan.

1         As a direct and proximate result of Defendants' conduct, Plaintiff was never offered a
2   practical loan modification, nor was he reviewed for other mitigating options in good faith.
3   Based on Defendant's representation they would continue working with him to secure a loan
4   modification, Plaintiff did not pursue other alternatives to foreclosure.  As a result, Plaintiff's
5   credit and credit scores have been destroyed.  Plaintiff's home is in imminent danger of
6   foreclosure.  Plaintiff suffered, and continues to suffer, general and special damages in an
7   amount to be determined at trial, including, but not limited to attorneys' fees and costs of
8   bringing suit to dispute.

9   **D.**    **Plaintiff's Claim for Negligence is Legally Justified**

10       The basic elements of a negligence action are: (1) The defendant had a legal duty to
11  conform to a standard of conduct to protect the plaintiff, (2) the defendant failed to meet this
12  standard of conduct, (3) the defendant's failure was the proximate or legal cause of the
13  resulting injury, and (4) the plaintiff was damaged. (*Ladd v. County of San Mateo* (1996) 12
14  Cal.4th 913, 917; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673.)
15  Recently, the California Court of Appeals discussed at length the foreclosure crisis that has
16  devastated California and the US, and the California Legislature's response (including the the
17  HBOR, which was passed by both houses and signed into law by the governor in mid-2012),
18  before concluding that mortgage lenders can owe a duty of care to borrowers:

19      "[W]e refer to the existence – and recent strengthening – of these legislative measures
20      because they demonstrate a rising trend to require lenders to ***deal reasonably with***
21      ***borrowers in default to try to effectuate a workable loan modification.***  In short, these
22      measures indicate that courts should not rely mechanically on the "general rule" that
    lenders owe no duty of care to their borrowers." *Jolley v. Chase Home Finance, LLC*
23      (2013) 213 Cal. App. 4th 872, 903 [emphasis added.]

24       The California Court Of Appeals further held that "Even when the lender is acting as a
25  conventional lender, the no-duty rule is only a general rule." *Jolley, supra*, at 901, citing *Osei*
26  *v. Countrywide Home Loans* (E.D.Cal. 2010) 692 F.Supp.2d 1240, 249.  Moreover, *a lender*
27  *does owe a duty to not make **material misrepresentations** about the status of an application for*

28

---

-10-

1   *a loan modification or about the date, the time or status of a foreclosure sale.*" *Lueras v. BAC*

2   *Home Loans Servicing, LP* (2013), 221 Cal.App.4th 49, 67-68.

3         By engaging with Defendants in loan modification, borrowers, like Plaintiffs, rely on

4   Defendants to conduct an honest, timely and accurate evaluation of their loan modification

5   applications. Borrowers have no control over the modification review process. Rather, they

6   must comply with the repeated requests for financial documents and must, according to

7   Defendants, remain delinquent on their mortgage payments in order to qualify for a loan

8   modification. Defendants breached their duty when failed to follow through with the

9   reinstatement agreement they entered into with Plaintiff. It was clearly a ***material***

10  ***misrepresentation*** when Defendants told Plaintiff they would cancel any and all foreclosure

11  activity upon receipt of Plaintiff $30,000.00 payment. In fact, Defendants never intended to

12  stop the foreclosure, but rather to force Plaintiff into foreclosure and an ultimate sale of his

13  home at far less than fair market value. As such, *Lueras* is controlling and Defendants did

14  have a duty to not make the material misrepresentation that they would honor the reinstatement

15  agreement and cease all foreclosure activity.

16        Regardless, the Court is allowed to use Res Ipsa Loquitor to assume "serious defects" in

17  a servicer's record keeping abilities evidenced by their inability to make a determination on a

18  borrower's three year old modification. *Ware v. Bayview Loan Servicing, LLC*, No. 13-CV-

19  1310 JLS (NLS) (S.D. Cal. Oct 29, 2013).

20        Each time Defendant's agent would call and inquire about the status of his loan

21  modification, Defendants would say that they were still working on his loan modification or

22  would ask for further documents, which were already submitted in the past. This process lasted

23  years, and culminated when Defendants sent Plaintiff a modification that was impossible to

24  accept within the timeframe allotted. Eventually, Defendants caused Plaintiff to lose his home

25  and his 30,000 dollars, which they promised will enable Plaintiff to avoid foreclosure of his

26  home. Nevertheless, Defendants' failed to credit Plaintiff for the payment and process his

27  modification information in a timely manner.

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

As a direct and proximate result of Defendants' conduct, Plaintiff was never offered a practical loan modification. Based on Defendant's representation they would continue working with him to secure a loan modification, Plaintiff did not pursue other alternatives to foreclosure. As a result, Plaintiff's credit and credit scores have been destroyed. Plaintiff's home was sold at far less than fair market value. Plaintiff suffered, and continues to suffer, general and special damages in an amount to be determined at trial, including, but not limited to attorneys' fees and costs of bringing suit to dispute.

E.   **Plaintiff's Claim for Promissory Fraud is Legally Justified**

Promissory fraud is a sub species of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that is actionable fraud. (*Union Flower Market, Ltd. v. Southern California Flower Market, Inc.* (1938) 10 Cal.2d 671); see Civ. Code, § 1710, subd. (4); 5 Witkin, Summary of Cal.Law, *supra*, § 685, pp. 786–787.) An action for promissory fraud lies where a defendant fraudulently induces the plaintiff to enter into a contract. (*Chelini v. Nieri* (1948) 32 Cal.2d 480, 487). In such cases the plaintiff's claim does not depend upon whether the defendant's promise is ultimately enforceable as a contract. (Rest.2d Torts, § 530, subd. (1), com. c, p. 65, cited with approval in *Tenzer v. Superscope* (1985) 39 Cal.3d 18, 29).

In the present case, Plaintiff was "fraudulently induced" to enter into a contract. Defendants fraudulently induced Plaintiff to enter into a contract by promising him that if he would pay 30,000 dollars, they would not foreclose upon his home.  Relying on such representation, Plaintiff went through great efforts to make sure he held up his end of the bargain.  For example, Plaintiff sold his vehicle to make the payment and there are records to show that he sold his vehicle. (Compl. ¶ 16). The amount and timing of the vehicle sale clearly shows that it was for the purposes of meeting his end of the bargain in the contract.

Defendants misrepresented to Plaintiff that they would not foreclose upon the Subject Property and after receiving his 30,000,  began foreclosure proceedings upon the Subject

-12-

1   Property.   It was justifiable for Plaintiff to believe that his property was not going to be
2   foreclosed upon since the bank, who had the authority and power to live up to the agreement
3   and halt the foreclosure proceedings, was the party who made the promise to save Plaintiff's
4   home upon his paying the 30,000 dollars. Finally, Plaintiff suffered considerable damage due
5   to Defendants' misrepresentations, as he was bullied into selling his home at a price much
6   lower than the fair market value. (Compl. ¶ 27)  The callousness of Defendants conduct clearly
7   evidences Defendant's intent to induce Plaintiff to enter this contract and pay 30,000 dollars.
8   Plaintiff paid the 30,000 dollars and performed his part, yet Defendants refused to honor the
9   payment and otherwise perform under the terms of the agreement.   There was justifiable
10  reliance on the part of Plaintiff and considerable damage and injury that resulted from Plaintiff
11  losing his home in a foreclosure sale.

12      F.  **Plaintiff's Claim for Promissory Estoppel**

13          The elements of a promissory estoppels claim are a.) a promise clear and unambiguous
14  in its terms; b.) reliance by the party to whom the promise is made; c.) the reliance is both
15  reasonable and foreseeable; and d.) the party asserting the estoppels must be injured by his
16  reliance. (*Advanced Choices, Inc. v. State Dept. of Health Services* (2010) 182 Cal.App.4th 161,
17  1672.) Under **promissory estoppel** doctrine, pursuant to California law, promisor is bound
18  when he should reasonably expect substantial change of position, either by act or forbearance,
19  in reliance on his promise, if injustice can be avoided only by its enforcement. *Patriot*
20  *Scientific Corp. v. Korodi*, S.D.Cal.2007, 504 F.Supp.2d 952.

21          In a recent California Appellate decision it was found that where a servicer promised to
22  cancel a foreclosure sale if a borrower paid an initial down payment , followed by monthly
23  payments to reinstate the loan, a valid claim of promissory estoppel exists. *Haroutunian v.*
24  *GMAC Mortg., LLC.*, 2013 WL 6687158 (Cal. Ct. App. Dec. 19, 2013). The appellate court
25  also held that the borrower did not breach the agreement by waiting to make the first monthly
26  payment until she received a schedule from the servicer. *Id.*   Here, Defendants clearly
27  promised Plaintiff that if he furnished 30,000 dollars, a made subsequent monthly payments,

28

---

his home would not be foreclosed upon and that he would obtain  a loan modification. Plaintiff's reliance was foreseeable and reasonable.

Defendants should have known that by asking Plaintiff to pay 30,000 in exchange for helping him save his home from foreclosure, that Plaintiff was going to furnish the 30,000 dollars by any means possible. The fact that Plaintiff did not continue with the monthly payments after being told by Defendants' that they had no knowledge of the agreement is not fatal to this claim.  It would be unreasonable to expect Plaintiff to continue with his monthly payments under the agreement when Defendants' are making a claim that they have no knowledge of the agreement.   Plaintiff's reliance on Defendants and/or Defendant's agents was a substantial factor in causing the harm. If Plaintiff did not rely on Defendants' promise to save his home in exchange for 30,000 dollars, then Plaintiff would have resorted to alternative means to save his home.

As a direct and proximate result of the carelessness of the Defendants set forth above, Plaintiff has suffered damages in an amount not presently ascertained and will be proved at trial, but in any event in a sum not less than $250,000.

### G.   Plaintiff's Claim for Breach of Implied Covenant of Good Faith and Fair Dealing is Legally Justified

Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.  This implied covenant of good faith and fair dealing requires that no party will do anything that will have the affect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement.  The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

As set forth in the Complaint, Defendants did not act in good faith and did not deal fairly with Plaintiffs in connection with the almost three (3) year modification process. Plaintiffs were forced to endure at Defendant's direction.  Defendants had unilateral control over the modification process and unreasonably delayed Plaintiff's review in a direct attempt

1  to gain as many fees, penalties and costs as possible to add to the principal of the note.

2  Contrary to Defendants assertions, Plaintiffs do not believe they are entitled to a loan

3  modification, but rather that they are entitled to be dealt with fairly by an entity in a position of

4  power of their interests.

5       As a result of Defendants' willful breached of this covenant, Plaintiffs have suffered

6  general and special damages in an amount to be determined at trial.

7       **H.    Plaintiff's Claim for Breach of Contract is Legally Justified**

8       The elements of a cause of action for breach of contract are: (1) existence of the

9  contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and

10 (4) damages to plaintiff as a result of the breach. *CDF Firefighters v. Maldonado*, 158

11 Cal.App.4th 1226, 1239 (2008).

12      Plaintiff and Defendant's agent, Catalina Santiago, agreed that Plaintiff would make a

13 $30,000.00 payment to Defendant by June 1, 2012.  The agreement further required that the

14 payment of the outstanding arrears of $14,000.00 would be paid-off by Defendant from August

15 2012 to February 2013.   In exchange for Plaintiff's payments, Defendant AURORA agreed

16 that it would not initiate foreclosure proceedings upon the home.

17      The terms of the agreement are definite and certain, as is the time for performance.

18 There was adequate consideration as Plaintiff was to pay to reinstate the loan, and Defendants

19 were to forego foreclosure activity on Plaintiff home.  Moreover, Plaintiff's performance under

20 the contract evidences the existence of such.  Plaintiff expended considerable effort to finance

21 the substantial $30,000.00 payment and even sold his vehicle to ensure he had a sufficient

22 amount.  Plaintiff executed two cashier's checks in the amount of $22,500.00 and $7,500.00

23 dated May 18, 2012 and May 29, 2012, respectively, made payable to AURORA BANK,

24 which were duly given to Defendant, AURORA before the June 1, 2012 deadline. (Compl ¶

25 16).  Following Plaintiff's performance under the terms of the contract, Plaintiff received a

26 letter from AURORA informing him that the servicing of his loan was being transferred to

27 NATIONSTAR effective July 1, 2012  Thereafter, Plaintiff confirmed with NATIONSTAR

28 that they were in receipt of the $30,000.00 payment, and that his loan was being reviewed.

1       Sometime in mid-August, Plaintiff again called Defendant, NATIONSTAR, to inquire

2 about the agreement made to AURORA, but, to Plaintiff's shock and dismay, Defendant,

3 NATIONSTAR stated that they had absolutely no record of the previous agreements made

4 between Plaintiff and Defendant, AURORA, nor any records of the $30,000.00 payment.  To

5 make matters worse, Defendant, NATIONSTAR, informed Plaintiff that his account was past-

6 due in the amount of $69,000.00 dollars, which was not reflective of the $30,000.00 payment

7 made to AURORA.

8      Accordingly, as a result of Defendants' breach, Plaintiff has suffered, and will continue to

9 suffer, compensatory, general and special damages in an amount according to proof at trial.

10     **I.**    **Plaintiff's Claim for IIED is Legally Justified**

11      The elements of an IIED claim in California are: (1) "[e]xtreme and outrageous conduct

12 by the defendant with the intention of causing, or reckless disregard of the potential for

13 causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress;

14 and (3) actual and proximate causation of the emotional distress by the defendant's outrageous

15 conduct." *KOVR-TV, Inc. v. Super. Ct.*, 31 Cal. App. 4th 1023, 1028, 37 Cal. Rptr. 2d 431

16 (Cal. Ct. App. 1995).  The California Supreme Court also held that behavior may be

17 considered "outrageous" if defendant abuses a position that gives defendant actual or apparent

18 authority over plaintiff, or power to affect plaintiff's interests. *See, Cole v. Fair Oaks Fire*

19 *Protection Dist.* (1987) 43 CA3d 148, 156.

20      Defendants agreed to review Plaintiff's loan for a modification that would help him get

21 back to making affordable payments under the loan.  Once that process begins, the loan

22 modification process is almost entirely out of the borrowers' hands.  The bank dictates which

23 documents borrowers must provide and when they must provide it.  Most importantly, the

24 enforcement of consequences for non-compliance is exclusively in the hands of the bank.  The

25 bank, in its sole discretion, determines whether to grant or deny borrowers a loan modification.

26 While the bank must comply with certain contractual obligations in respect of government-

27 sponsored loan modification programs, there is little to no regulatory oversight to ensure that

28

1    the bank properly meets such obligations.  Thus defendant had a position that gave them actual

2    *and* apparent authority over plaintiff, *and* power to affect plaintiff's interests.

3         Plaintiff spent endless hours each night in a good faith effort to comply with each and

4    every demand made by Defendants.  Ostensibly, this became a full time job for Plaintiff for

5    months. Plaintiff's performance at work suffered, as did the relationships with his family.  He

6    was so consumed with completing this process that he missed work opportunities as well as

7    family functions.

8         In sum, Defendant had a position that gave them actual *and* apparent authority over

9    plaintiff, *and* power to affect plaintiff's interests, and as set forth in detail herein, Defendants

10   abused their position as lender and sole arbiter of granting loan modification that gave them

11   authority over Plaintiff and power to affect plaintiff's interests. As a result of the outrageous

12   acts of the Defendants, and each of them, Plaintiff suffered, and continues to suffer from

13   extreme anxiety, loss of self-esteem, headaches, depression and other emotional issues.

14       **J.    Plaintiff's Claim for Violation of California Business and Professions Code**

15   **17200 is Legally Justified**

16       California's Unfair Competition Law (UCL), which provides for restitution and

17   injunctive relief against any unlawful, unfair and fraudulent practice, provides another

18   opportunity for borrowers to obtain injunctive relief to stop or postpone a foreclosure.(*West v.*

19   *JP Morgan Chase Bank N.A.*, 214 Cal. App. 4th 780, 805 (2013)). There are three prongs to a

20   UCL claim.

21       The unlawful prong claims may be brought regardless of whether the underlying statute

22   provides a private right of action (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th

23   553 (1998).  In addition, because UCL's remedies are cumulative to existing remedies, an

24   unlawful prong claim might provide injunctive relief for HBOR violations even after the

25   trustee's deed is recorded.  Such post-sale relief would be unavailable under HBOR's statutory

26   remedies. (Cal. Bus. and Prof. Code Section 17205).

27       The unfair prong of the UCL makes unlawful practices that violate legislatively stated

28   public policy, even if that activity is not technically prohibited by statute.  For example, even

-17-

1   though HBOR did not become effective until 2013, courts have held pre-2013 dual tracking
2   unfair under the UCL. (*Cabrera v. Countrywide Fin.*, 2012 WL 5372116) (N.D. Cal. Oct. 30,
3   2012). The fraudulent prong of the UCL prohibits fraudulent practices that are likely to
4   deceive the public. (*Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824,
5   838)(2006).

6          The fraudulent prong of the UCL prohibits fraudulent practices that are likely to deceive
7   the public. (*Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838 (2006). For
8   example, courts have allowed UCL fraudulent claims against banks that offered trial period
9   plans that did not comply with HAMP guidelines and that misrepresented their method of
10   posting fees and service charges to mortgage accounts (*West v. JP Morgan Chase Bank N.A.*,
11   214 Cal. App. 4th 780, 806) (2013) (*Ellis v. JP Morgan Chase Bank, N.A.*, 2013 WL 2921799
12   at 17) (N.D. Cal. June 13, 2013).

13          In the present case, Defendants committed acts of unfair competition by engaging in
14   unlawful, unfair and fraudulent business acts and practices in the State of California. At all
15   times during its dealings with Plaintiff, Defendants maintained exclusive control over the
16   modification process. Not only did Defendants have the capacity to deceive Plaintiff, but did
17   in fact deceive Plaintiff.  Defendants intentionally mislead Plaintiff into believing he was
18   going to receive a permanent modification, only to collect as much money from Plaintiff as
19   possible before forcing them into foreclosure.

20          In fact, Defendants did induce Plaintiff into making a lump sum $30,000.00 payment.
21   This payments was received and accepted by Defendants, yet it has never been credited to
22   Plaintiff's account, nor have Defendants abided by the terms of the agreement by stopping the
23   foreclosure of Plaintiff's home. This is undeniably given Defendants an unfair advantage over
24   their competition, as it is unlikely that Defendants' competition will take to breaking the law to
25   secure $30,000.00 from their customers and not credit it to their account. Defendants' careless
26   action have placed the entire banking industry in jeopardy, as it likely is not the first or the last
27   time Defendants' choose to take such actions.

28

-18-

1
2
3
## IV. CONCLUSION
4
Plaintiff respectfully requests that the Court deny the Motion to Dismiss, or in the
5
alternative grant leave to amend the Complaint to allege sufficient further facts.
6
7
Respectfully submitted,
8
9
Dated: February 14, 2014                         GOMEZ & SIMONE PC
10
11
12
By: _____
13
Mark Gomez, Esq.
Attorney for Plaintiff, Eduardo Sanchez
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

(Sec. 1013(a) C.C.P.)

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 3699 Wilshire Blvd. Suite 720, Los Angeles, CA 90010.

On **February 14, 2014** I served the foregoing document described as **"OPPOSITION TO MOTION TO DISMISS"** on the interested parties in this action:

☒ by placing:
    ☐ the original
    ☒ a true copy thereof enclosed in sealed envelope with first class postage affixed thereto and addressed as follows:

Kevin S. Kim
GREEN & HALL
1851 East First Street, 10th Floor
Santa Ana, California 92705-4052
*Attorney for Defendants Nationstar Mortgage,*
*LLC and Aurora Loan Services, LLC*

☒ BY OVERNIGHT MAIL I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on the same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ BY PERSONAL SERVICE:  I personally delivered the document(s) listed above to the above-stated address.

☒ BY FACSIMILE SERVICE:  I personally faxed the document(s) listed above to the fax number/s belonging to party being served.

☐ STATE I declare under penalty of perjury that the foregoing is true and correct.

☒ FEDERAL I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on **February 14, 2014**, in Los Angeles, CA.

**Beatriz Reyes**

-20-

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS