UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EDUARDO SANCHEZ, an individual, | ) | CASE NO. CV 13-08846 MMM (RZx) |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANTS' |
| | ) | MOTION TO DISMISS |
| vs. | ) | |
| | ) | |
| AURORA LOAN SERVICES, LLC; | ) | |
| NATIONSTAR MORTGAGE LLC; and | ) | |
| Does 1-10, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

On October 29, 2013, Eduardo Sanchez filed this action in Los Angeles Superior Court against Aurora Loan Services, LLC ("Aurora"), Nationstar Mortgage, LLC ("Nationstar"), and various fictitious defendants.[1]  Sanchez's complaint pled ten causes of action arising out of his decision to sell his home for purportedly less than the market value: (1) violation of the Homeowner's Bill of Rights Act ("HBOR"), California Civil Code § 2924.17, *et seq.*; (2) violation of the Perata Mortgage Relief Act ("PMRA"), California Civil Code §§ 2923.4 and 2932.5; (3) negligence; (4) promissory fraud; (5) promissory estoppel; (6) breach of the implied covenant of good faith and fair dealing; (7) breach of contract; (8) intentional infliction of emotional distress ("IIED"); (9) violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq.*; and (10) quiet title.  On December 2,

---

[1]Notice of Removal ("Removal"), Docket No. 1 (Dec. 2, 2013), Exh. 1 (Complaint).

2013, defendants timely removed the action to this court, invoking the court's diversity jurisdiction, and on December 9, 2013, they filed a motion to dismiss.[2]  Sanchez opposes the motion.[3]

## I.  FACTUAL BACKGROUND

Sanchez alleges that in February 2007, he acquired the deed to a property located at 1453 Echo Park Avenue, Los Angeles, CA 90026.[4] Sanchez obtained financing for the property through Resmae Mortgage Corporation ("Resmae"), secured by a deed of trust on the property.[5] Mortgage Electronic Registration Systems, Inc. ("MERS") was Resmae's nominee for purposes of the deed of trust.[6]  On October 28, 2011, MERS recorded a Corporate Assignment of Deed of Trust, assigning it to Aurora Bank, FSB.[7]

On or about June 20, 2011, Sanchez entered into negotiations with Aurora, seeking a loan modification due to financial difficulties.[8]  On that date, at Aurora's request, Sanchez sent financial documents to Aurora's loan mitigation department.[9]  Over the next year, Sanchez allegedly submitted "copious" financial documents to Aurora, including bank statements, profit

---

[2]Motion to Dismiss ("Motion"), Docket No. 9 (Dec. 9, 2013).

[3]Opposition to Motion to Dismiss ("Opposition"), Docket No. 19 (Feb. 14, 2014).

[4]Complaint, ¶¶ 6-7, Exh. A (February 2, 2007 Deed of Trust ("Deed")).

[5]*Id.*, ¶ 8.

[6]*Id.*, Exh. A (Deed).

[7]*Id.*, ¶ 9, Exh. B (October 28, 2011 Corporate Assignment of Deed of Trust ("Aurora Assignment")).

[8]*Id.*, ¶¶ 11-13.

[9]*Id.*, ¶ 13, Exh. D (June 20, 2011 fax of financial documents from Sanchez to Aurora ("June 20 Fax")).

and loss statements, mortgage statements, and lease agreements.[10]  Sanchez asserts that he was in constant contact with Aurora.[11]  On December 14, 2011, Cal-Western Reconveyance Corporation ("Cal-Western"), as trustee, recorded a notice of default in the Los Angeles County Recorder's Office; the notice stated that Sanchez's loan was in arrears $26,862.35.[12]

Sanchez contends that in May 2012, he and Aurora – through Aurora's agent Catalina Santiago – entered into an agreement to place him on a repayment plan.[13]  The agreement provided that Sanchez would make a $30,000 payment to Aurora by June 1, 2012.[14]  Thereafter, he was to repay the outstanding arrears of $14,000 by making payments from August 2012 to February 2013.[15]  In exchange for these payments, Aurora purportedly agreed not to initiate foreclosure proceedings and agreed that he would obtain a loan modification.[16]

Sanchez alleges that he expended considerable effort to finance the $30,000 lump sum payment; he asserts he ultimately sold his vehicle to ensure he could make the payment.[17]  Sanchez contends that he paid the $30,000 in two cashier's checks: the first dated May 18, 2012 for $22,500 and the second dated May 29, 2012 for $7,500.[18]  He alleges that these checks were

---

[10]*Id.*, ¶ 14, Exh. E (faxes of financial documents from Sanchez to Aurora (2011-2012 Faxes")).

[11]*Id.*, ¶ 12.

[12]Request for Judicial Notice in Support of Motion to Dismiss ("RJN"), Docket No. 9-2 (Dec. 9, 2013), Exh. 1 (December 14, 2011 Notice of Default ("Default")).  The court takes judicial notice of this, and other documents referenced in this statement of facts, for reasons discussed *infra*.

[13]Complaint, ¶ 15.

[14]*Id.*

[15]*Id.*

[16]*Id.*, ¶¶ 15, 71.

[17]*Id.*, ¶ 16.

[18]*Id.*, ¶ 16, Exh. G (May 18 and May 29, 2012 Cashier's Checks ("Cashier's Checks")).

given to Aurora before the June 1, 2012 deadline, and that Aurora cashed the checks on June 15 and June 18, 2012, respectively.[19]

Sanchez purportedly he went on vacation with his family in early June.  When he returned in mid-June, he received a letter from Aurora dated June 15, 2012, notifying him that the servicing of his loan was being transferred to Nationstar on July 1, 2012.[20]  The letter also stated that "Aurora Bank w[ould] be transferring all of [Sanchez's] documentation to Nationstar Mortgage LLC."  The letter also stated that all "approval decisions" regarding any possible "loss mitigation options" prior to July 1, 2012 would be made by Aurora, while approval decisions regarding possible loss mitigation options after July 1, 2012 would be made by Nationstar.[21]  Sanchez alleges that in July 2012, he made multiple telephone calls to Nationstar to ensure that it was aware of the prior agreement he had reached with Aurora, and of the $30,000 he had paid.[22]  On July 31, 2012, Sanchez spoke with a Nationstar agent named Joyce at telephone number (317) 806-7058.[23]  Joyce told Sanchez that his file had been assigned to her, and confirmed that Nationstar had received the $30,000 payment.[24]  Joyce told Sanchez the status of his file was being reviewed and he should wait two more weeks.[25]

In mid-August, Sanchez called Nationstar again.  Nationstar purportedly told Sanchez it had no record of a prior agreement between him and Aurora, nor any record of the $30,000

---

[19]*Id.*, ¶¶ 16-17, Exhs. I (June 18, 2012 Wells Fargo Verifications of Cashed Cashier's Check ("June 18 Verification")), J (June 15, 2012Wells Fargo Verifications of Cashed Cashier's Check ("June 15 Verification")).

[20]*Id.*, ¶ 17, Exh. H (June 15, 2012 Letter from Aurora to Sanchez ("June 15 Letter")).

[21]*Id.*, ¶ 18.

[22]*Id.*, ¶ 19.

[23]*Id.*, ¶ 20.

[24]*Id.*

[25]*Id.*

payment.[26]  Nationstar advised Sanchez that his account was in arrears $69,000, which allegedly did not take the $30,000 payment he had made to Aurora into account.[27]  Sanchez asserts that he worked "tirelessly" to determine why Nationstar had no record of the payment or his agreement with Aurora.  At some point in 2012 he spoke with Santiago again, who was now a Nationstar agent.[28]  Santiago confirmed that she remembered his account and the agreement he had had with Aurora.[29]  She reaffirmed, however, that Nationstar had no record of the transaction.[30]

Sanchez contends that at that point, he decided to initiate the loan modification process with Nationstar to avoid foreclosure.[31]  He purportedly submitted numerous documents to Nationstar; the exhibits to the complaint show that on August 13, 2012, he applied for a modification plan through the Making Home Affordable Program ("HAMP").[32]  In or about November 2012, a Nationstar agent named April Lyons informed Sanchez that she would make a "request for payment history" regarding the $30,000 payment to Aurora; she told Sanchez to call her back on January 13, 2013.[33]

On November 28, 2012, Cal-Western recorded a notice of trustee's sale, which set a sale for December 27, 2012.[34]  The notice stated that Sanchez owed $410,253.86 on the loan.[35]

---

[26]*Id.*, ¶ 21.

[27]*Id.*

[28]*Id.*, ¶ 22.

[29]*Id.*

[30]*Id.*

[31]*Id.*, ¶ 23.

[32]*Id.*, ¶ 23, Exh. M (July through October faxes from Sanchez to Nationstar ("Nationstar Faxes")).

[33]*Id.*, ¶ 25.

[34]RJN, Exh. 2 (November 28, 2012 Notice of Trustee's Sale ("Sale Notice")).

[35]*Id.*

Sometime around Christmas, Nationstar sent Sanchez a letter stating that he had three days to accept a loan modification.[36]  Sanchez alleges that three days was not enough notice and that, as a result, he had to rush to short sell his home for far below the market value.[37]  Specifically, he alleges that he sold the home for $620,000 but that it was worth at least $750,000 or more.[38]  On February 15, 2013, the purchaser of the home, Yan Lee, recorded a grant deed.[39]  Sanchez alleges that in addition to this loss, he "amassed tens of thousands of dollars in penalties, fees and costs [as a result of defendants' conduct] that were added to the principal of the note."[40]  Sanchez alleges that he spent so much time trying to comply with all of defendants' demands that his performance at work suffered, as did his relationship with his family.[41]  He asserts as well that due to defendants' conduct, he did not pursue other alternatives to foreclosure.[42]  In assertions that contradict his allegation that he sold the property, Sanchez pleads that his home was wrongfully sold at foreclosure.[43]

## II.  DISCUSSION

### A.    Defendants' Request for Judicial Notice

Defendants request that the court take judicial notice of four documents that relate to Sanchez's claims.[44]  All of the documents have either been recorded by the Los Angeles County

---

[36]Complaint, ¶ 26.

[37]*Id.*, ¶ 27.

[38]*Id.*

[39]RJN, Exh. 3 (February 15, 2013 Grant Deed ("Grant Deed")).

[40]Complaint, ¶ 92.

[41]*Id.*, ¶ 100.

[42]*Id.*, ¶ 134.

[43]*Id.*, ¶ 150.

[44]RJN at 2.

Recorder's Office or are available on the website of the California Department of Business Oversight ("CDBO").[45]  Sanchez does not oppose defendants' request.

In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).  A court must normally convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it "considers evidence outside the pleadings. . . .  A court may, however, consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).  See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (a court may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Branch v. Tunnell* 14 F.3d 449, 453 (9th Cir. 1994) (noting that a court may consider a document whose contents are alleged in a complaint, so long as no party disputes its authenticity), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Thus, in ruling on a motion to dismiss, the court can consider material that is subject to judicial notice under Rule 201 of the Federal Rules of Evidence.  FED.R.EVID. 201.  Under Rule 201, the court can judicially notice "[o]fficial acts of the legislative, executive, and judicial departments of the United States," and "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."  Courts have held that "[j]udicial notice is appropriate for records and 'reports of administrative bodies.'"  *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008) (quoting *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954)).

---

[45]*Id.*

Defendants ask that the court take judicial notice of three documents recorded by the Los Angeles County Clerk and Recorder: (1) the notice of default recorded December 14, 2011; (2) the notice of trustee's sale recorded November 28, 2012; and (3) the grant deed recorded February 15, 2013.[46] The documents defendants seek to have the court consider are each time and date stamped, and have a record number.   Other courts have taken judicial notice of such documents as public filings.   See *Velazquez v. GMAC Mortgage Corp.*, 605 F.Supp.2d 1049, 1057-58 (C.D. Cal. 2008) (taking judicial notice of documents recorded by the Los Angeles County Recorder's Office, including deeds of trust); see also *Krug v. Wells Fargo Bank, N.A.*, No. 11–CV–5190 YGR, 2012 WL 1980860, *2 (N.D. Cal. June 1, 2012) (public records are judicially noticeable under Rule 201); *Grant v. Aurora Loan Services, Inc.*, 736 F.Supp.2d 1257, 1264 (C.D. Cal. 2010) (noting that a "[party] provided a reference number for the document, showing that it was in fact recorded; this demonstrates that it is a public record"); *Fimbres v. Chapel Mortgage Corp.*, No. 09-CV-0886-IEG (POR), 2009 WL 4163332, *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of a deed of trust, notice of default, notice of trustee's sale, assignment of deed of trust, and substitution of trustee as each was a public record); *Angulo v. Countrywide Home Loans, Inc.*, No. 1:09-CV-877-AWI-SMS, 2009 WL 3427179, *3 n. 3 (E.D. Cal. Oct. 26, 2009) ("The Deed of Trust and Notice of Default are matters of public record.   As such, this court may consider these foreclosure documents"); *Distor v. U.S. Bank NA*, No. C 09-02086 SI, 2009 WL 3429700, *2 (N.D. Cal. Oct. 22, 2009) (finding that a deed of trust, notice of default and election to sell under deed of trust, and notice of trustee's sale were matters of public record and thus proper subjects of judicial notice).   The court therefore grants defendants' request for judicial notice as to documents that have been recorded by the County Recorder and will consider them in deciding the motion to dismiss.

---

[46]*Id.*

As noted, defendants also ask that the court judicially notice a webpage available on the CDBO's website. This page lists mortgage servicers with more than 175 foreclosures in 2012.[47] This information, too, is the proper subject of judicial notice because it is capable of accurate and ready determinations by resort to sources whose accuracy cannot reasonably be questioned. Specifically, it is available on the public website of the CDBO and neither party disputes its authenticity. Courts frequently take judicial notice of "[p]ublic records and government documents available from reliable sources on the Internet." *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08–CV–1166–IEG, 2009 WL 6597891, *1 (S.D. Cal. Dec. 23, 2009) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)). See also *Daniels-Hall v. National Education Association,* 620 F.3d 992, 999 (9th Cir. 2010) (taking judicial notice of information displayed on the website of two school districts because they were government entities); *Paralyzed Veterans of Am. v. McPherson*, No. C 06–4670, 2008 WL 4183981, *5 (N.D. Cal. Sept. 8, 2008) ("Information on government agency websites has often been treated as properly subject to judicial notice"). Accordingly, the court takes judicial notice of the information on the CDBO's webpage regarding the number of mortgage servicers with more than 175 foreclosures.

### B.      Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

---

[47]*Id.*, Exh. 4 (CDBO Website: California Foreclosure Reduction Act, www.dbo.ca.gov/Law_&_Regs/legislation/ca_foreclosure_reduction_act.asp ("CDBO Webpage")).

1      The court need not, however, accept as true unreasonable inferences or conclusory legal

2   allegations cast in the form of factual allegations.  See *Bell Atlantic Corp. v. Twombly*, 540 U.S.

3   544, 553–56 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

4   need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

5   'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

6   the elements of a cause of action will not do").  Thus, a plaintiff's complaint must "contain

7   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'

8   . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court

9   to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

10  *v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Twombly*, 550 U.S. at 545 ("Factual allegations must

11  be enough to raise a right to relief above the speculative level, on the assumption that all the

12  allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United*

13  *States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion

14  to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must

15  be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

16      **C.     Whether Sanchez Has Adequately Alleged a Claim Under the HBOR**

17      HBOR was signed into law on July 11, 2012 and took effect on January 1, 2013.  See Cal.

18  Stats.2012, Ch. 86, Assembly Bill 278, § 20; *Michael J. Weber Living Trust v. Wells Fargo Bank,*

19  *N.A.*, No. 13–cv–00542–JST, 2013 WL 1196959, *4 (N.D. Cal. Mar. 25, 2013) ("The Governor

20  signed the CHBR into law on July 11, 2012, and it took effect on January 1, 2013").  Sanchez

21  alleges that defendants violated California Civil Code §§ 2924.10(a), 2923.6(c), and 2923.7(c),

22  which were enacted as part of HBOR.[48]  These provisions require, respectively, that a mortgage

23  servicer must provide written acknowledgment of the receipt of a borrower's complete first lien

24  modification application within five business days of receipt,[49] that a mortgage servicer may not

25

26      [48]Complaint, ¶¶ 34-43.

27      [49]Specifically, § 2924.10(a) provides: "When a borrower submits a complete first lien

28  modification application or any document in connection with a first lien modification application,

record a notice of default, notice of sale, or conduct a trustee's sale while a complete first lien loan modification is pending,[50] and that a mortgage servicer must, at the borrower's request, identify an employee who will serve as the borrower's single point of conduct at the servicer and remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options have been exhausted or the borrower's account has been brought current.[51]

Defendants contend that Sanchez's HBOR cause of action must be dismissed because the statute is not retroactive, and all of the events about which Sanchez complains took place prior to January 1, 2013.[52] "California courts comply with the legal principle that unless there is an express retroactivity provision, a statute will not be applied retroactively unless it is very clear

the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt. In its initial acknowledgment of receipt of the loan modification application, the mortgage servicer shall include the following information: (1) A description of the loan modification process, including an estimate of when a decision on the loan modification will be made after a complete application has been submitted by the borrower and the length of time the borrower will have to consider an offer of a loan modification or other foreclosure prevention alternative. (2) Any deadlines, including deadlines to submit missing documentation, that would affect the processing of a first lien loan modification application. (3) Any expiration dates for submitted documents. (4) Any deficiency in the borrower's first lien loan modification application." CAL.CIV.CODE § 2924.10(a).

[50]Section 2923.6(c) provides: "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs: . . . (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer." CAL. CIV. CODE § 2923.6(c).

[51]Section 2923.7 provides: "Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact. . . . The single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current." CAL. CIV. CODE § 2923.7(a) & (c).

[52]Motion at 5-6.

from extrinsic sources that the Legislature . . . must have intended a retroactive application." *Myers v. Philip Morris Cos.*, Inc., 28 Cal.4th 828, 841 (2002) (citations omitted); see also CAL. CIV. CODE § 3 ("No part of [the California Civil Code] is retroactive, unless expressly so declared").  HBOR does not state that it is retroactive, and Sanchez does not argue that any extrinsic source shows the legislature clearly intended the statute to apply retroactively.  Rather, he tacitly concedes that HBOR is not retroactive, and asserts that defendants' conduct "spilled [over] well into 2013."[53]  Absent argument from Sanchez to the contrary, and given that the statute does not mention retroactivity, the court agrees with the many district courts in California that have concluded that HBOR does not apply retroactively.  See, e.g., *Sears v. Bank of America, N.A.*, No. 2:13–cv–01664–KJM–AC, 2013 WL 6199197, *3 (E.D. Cal. Nov. 27, 2013) (dismissing HBOR claims because, *inter alia*, the statute does not apply retroactively and "[b]ecause plaintiff does not plead exact dates on which defendants' allegedly unlawful conduct occurred, the court cannot discern which of plaintiff's allegations may survive"); *Salcido v. Vericrest Financial & Summit Management Company LLC*, Case No: C 13–3450 SBA, 2013 WL 5946090, *7 (N.D. Cal. Nov. 5, 2013) ("Plaintiff's sixth and final cause of action is based on the California Homeowners' Bill of Rights ("HBR"), which Governor Brown signed into law on July 11, 2012, and [which] took effect on January 1, 2013. . . .  Here, Plaintiff's claim accrued at the latest on April 24, 2012, the date the Property was sold at a trustee's sale.  Since the conduct at issue occurred prior to the effective date of the HBR, his claim under such statute must fail" (internal citations omitted)); *Rockridge Trust v. Wells Fargo, N.A.*, __ F.Supp.2d _, 2013 WL 5428722, *28 (N.D. Cal. Sept. 25, 2013) (concluding that HBOR does not apply retroactively and considering "only documents submitted after January 1, 2013"); *Sabherwal v. Bank of New York Mellon*, No. 11cv2874 WQH–BGS, 2013 WL 4833940, *10 (S.D. Cal. Sept. 10, 2013) (dismissing a cause of action under HBOR because the statute does not apply retroactively); *Michael J. Weber Living Trust*, 2013 WL 1196959 at *4 (denying a temporary restraining order and finding that plaintiff had not shown there were serious questions going to the merits of his

---

[53]Opposition at 8.

1   HBOR claim because HBOR is not retroactive and plaintiff's claim "applies to actions that

2   allegedly occurred before January 1"); see also *Sporn v. JPMorgan Chase Bank N.A.*, G047501,

3   2014 WL 280627, *5 (Jan. 27, 2014) ("[P]laintiff claims the Homeowners Bill of Rights and

4   particularly section 2924, subdivision (a)(6) applies. . . . But this statute became effective January

5   1, 2013 and does not apply because the foreclosure was already initiated before that date"); *Didak*

6   *v. Merrill Lynch Mortgage Investors, Inc.*, B240704, 2013 WL 2586111, *8 (Cal. App. June 12,

7   2013) ("Nowhere in its text does HBR state that it applies retroactively.  Further, appellants do

8   not point to any portion of the statutory scheme's text or its legislative history that suggests that

9   the California Legislature intended HBR to apply retroactively.  Because HBR went into effect

10  after respondents filed the notice of default in 2011, it does not grant appellants new rights upon

11  appeal.  Therefore, California's nonjudicial foreclosure statutory scheme as it existed at the time

12  respondents recorded the notice of default in 2011 applies to this matter"); *Long v. Onewest Bank,*

13  *FSB*, G046402, 2013 WL 1849682, *2 n. 4 (Cal. App. May 3, 2013) ("Because the California

14  Homeowner Bill of Rights became effective on January 1, 2013, . . . after Defendants foreclosed

15  on the Longs' property, we do not address its application to this case").[54]

16      Sanchez's complaint alleges that Aurora transferred servicing of his loan to Nationstar on

17  July 1, 2012.[55]  His complaint does not alleges that Aurora took any action with respect to his loan

18  after that date.  Accordingly, he has not stated a claim under the HBOR against Aurora, and his

19  first claim must be dismissed for this reason.  Because the judicially noticeable documents reflect

20  that Aurora did indeed transfer servicing of Sanchez's loan to Nationstar on July 1, 2012, the

21  court dismisses Sanchez's HBOR claim against it with prejudice, as it is not possible that Sanchez

22  will be able to state a HBOR claim against Aurora.

---

24      [54]"Although the court is not bound by unpublished decisions of intermediate state courts,
25  unpublished opinions that are supported by reasoned analysis may be treated as persuasive
    authority." *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05-313 VRW, 2005 WL 2893865,
26  *3 (N.D. Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330
27  F.3d 1214, 1220 n. 8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even
    though such opinions have no precedential value")).

28      [55]*Id.*, ¶ 17, Exh. H (June 15, 2012 Letter from Aurora to Sanchez ("June 15 Letter")).

1    Sanchez submitted his loan modification application to Nationstar on August 13, 2012.

2    Even assuming Nationstar did not receive the application for several days thereafter, Sanchez's

3    cause of action against Nationstar under § 2924.10(a) for failing to acknowledge receipt of the

4    application accrued at the latest in late August or early September 2012.  At that point, HBOR was

5    not yet in effect.  Sanchez therefore cannot state a claim under § 2924.10(a) against Nationstar and

6    that aspect of his claim must be dismissed with prejudice.

7    With respect to Sanchez's claim against Nationstar under § 2923.6(c), Nationstar recorded

8    a notice of trustee's sale on November 28, 2012, which set a sale date of December 27, 2012.

9    At the time it recorded the notice of trustee's sale, HBOR was not in effect.  Sanchez does not

10   allege that Nationstar took any action after that date.  The trustee's sale never took place because

11   Sanchez then sold his property to Lee.  Nationstar cannot be liable for violating § 2923.6(c) for

12   recording a notice of trustee's sale while considering Sanchez's application for a loan modification

13   in 2012.  Because it is possible that Sanchez could allege Nationstar recorded another notice of

14   sale in 2013, however, the court dismisses this aspect of Sanchez's claim with leave to amend.

15   As respects the final aspect of Sanchez's HBOR claim against Nationstar – his assertion

16   that Nationstar violated § 2923.7(c) by failing to provide a single point of contact for

17   communications regarding a loan modification – it is unclear on the fact of the complaint whether

18   this aspect of the claim is barred.  The complaint does not state when Sanchez sold the property

19   to Lee and paid off his mortgage.  Lee recorded a grant deed on February 15, 2013, but there is

20   no information in the deed or in Sanchez's allegations concerning the date on which Sanchez sold

21   the property and paid off his mortgage.  Thus, the court cannot say that Nationstar does not face

22   liability under § 2923.7(c) for having failed to establish a single point of contact for Sanchez

23   because it is possible that Nationstar continued servicing Sanchez's loan into 2013.  As a result,

24   the effective date of HBOR does not provide a basis upon which to dismiss this aspect of

25   Sanchez's claim.

26   Sanchez's § 2923.7 claim must nonetheless be dismissed because a loan servicer faces

27   liability under § 2923.7 only if it fails to provide a single point of contact "[u]pon request from

28   a borrower."  CAL. CIV. CODE § 2923.7(a).  Sanchez has not alleged he requested that Nationstar

1    provide a single point of contact for the loan modification discussions.  He also has not adequately

2    alleged that Nationstar failed to provide a single point of contact.  Indeed, Sanchez alleges that

3    Nationstar "provided [Sanchez] with the name of an individual who has purported to be Plaintiff's

4    [single point of contact], yet this individual has failed to respond to [Sanchez's] requests for

5    assistance, and has otherwise not answered [Sanchez's] many telephone calls to inquire as to the

6    status of his situation.  [Sanchez] could not make contact and has not spoken with the alleged

7    [single point of contact] despite numerous attempts."[56]  Such conduct might perhaps state a

8    violation of § 2923.7(a) but is not a violation of § 2923.7(c), which, as noted, requires only that

9    a mortgage servicer provide a single point of contact who "remain[s] assigned to plaintiff's

10   account until the mortgage servicer determines that all loss mitigation options offered by or

11   through the . . . servicer have been exhausted or the borrower's account becomes current."

12       For these reasons, Sanchez's claim under § 2923.7(c) must be dismissed.  Because Sanchez

13   may be able to state such a claim against Nationstar, however, the court dismisses the claim with

14   leave to amend.

15       **D.    Whether Sanchez Has Adequately Alleged a Claim for Violation of the PMRA**

16       Defendants next move to dismiss Sanchez's PMRA claim, which is asserted under Civil

17   Code §§ 2923.4 and 2923.5.  Section 2923.4 addresses the purpose of the PMRA.  It states that

18       "[t]he purpose of the act that added this section is to ensure that, as part of the

19       nonjudicial foreclosure process, borrowers are considered for, and have a

20       meaningful opportunity to obtain, available loss mitigation options, if any, offered

21       by or through the borrower's mortgage servicer, such as loan modifications or other

22       alternatives to foreclosure. Nothing in the act that added this section, however, shall

23       be interpreted to require a particular result of that process."  CAL. CIV. CODE §

24       2923.4.

25

26

27   ───────────────

28       [56]Complaint, ¶ 41.

To effectuate this purpose, the version of § 2923.5 that was in effect from January 1, 2010 to December 31, 2012, and that governed mortgages or deeds of trust recorded from January 1, 2003 through December 31, 2007, required mortgagees to

> "contact [a] borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure [at least 30 days prior to filing a notice of default]. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days." CAL. CIV. CODE § 2923.5(a) (2010).

Defendants argue that Nationstar cannot be liable for violating § 2923.5 because it conducted more than 175 foreclosures in 2012, and the statute therefore does not apply to it.[57] The provision exempting mortgagees who conducted more than 175 foreclosures in a year, however, was only added to the statute as of January 1, 2013. See CAL. CIV. CODE § 2923.5(g) (2013) ("This section shall only apply to entities described in subdivision (b) of Section 2924.18," describing depository institutions that, during the immediately preceding annual reporting period, foreclosed on 175 or fewer residential real properties). The version of the statute in effect during the period when the notice of default relative to Sanchez's loan was filed did not exclude such entities from its reach.

Defendants next assert that Sanchez's claim fails because postponement of a scheduled foreclosure sale is the only remedy available under § 2923.5.[58] Defendants contend that any such claim is moot because Sanchez has sold his home and there is no pending foreclosure sale to postpone.[59] The court agrees. In *Mabry v. Superior Court*, 185 Cal.App.4th 208, 223 (2010), the California Court of Appeal concluded that the only remedy available for a violation of

---

[57]Motion at 7 n. 5.

[58]*Id.* at 8.

[59]*Id.*

§ 2923.5 is a postponement of a pending foreclosure sale.  See *id.* ("The available, existing remedy [for a violation of § 2923.5] is found in the ability of a court in section 2924g, subdivision (c)(1)(A) to postpone the sale until there has been compliance with section 2923.5.").

   While, as noted, Sanchez's complaint inconsistently alleges both that he sold his property privately and that defendants sold his property at foreclosure, the court has taken judicial notice of the grant deed reflecting that Sanchez sold the property to Lee.  Both the complaint and Sanchez's opposition repeatedly allege that he was damaged because, as a result of defendants' conduct, he was pressured to sell his home for less than its market value.  In deciding a motion to dismiss, the court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Because the grant deed conclusively shows that Sanchez sold his property to Lee, the court need not accept as true allegations that a foreclosure sale is pending or that defendants conducted a foreclosure sale.  Because it is clear that Sanchez has already sold his property, he has no available remedy under § 2923.5, and the claim must be dismissed.  See, e.g., *Martinez v. America's Wholesale Lender*, No. 10-15843, 2011 WL 3562937, *1 (9th Cir. Aug. 15, 2011) (Unpub. Disp.) ("It follows that a claim under Section 2923.5 necessarily fails if a foreclosure sale has occurred.  Defendants observe that the relevant property was sold in foreclosure on April 28, 2010, and Martinez concedes this fact in her reply.  Martinez's Section 2923.5 claim therefore fails" (internal citation omitted)); *Esoimeme v. Wells Fargo Bank*, No. CIV S–10–2259 JAM EFB PS, 2011 WL 3875881, *13 (E.D. Cal. Sept. 1, 2011) (dismissing plaintiff's § 2923.5 claim because the property had already been sold); *Alda v. Wells Fargo Bank, N.A.*, No. CIV S–11–925 MCE DAD (TEMP) PS, 2011 WL 2678886, *3 (E.D. Cal. July 7, 2011) (dismissing a § 2923.5 claim because "the only remedy provided under the statute is postponement of the sale before it happens, and in this case, the subject property was sold in March, 2011").  Because Sanchez cannot under any circumstances allege a claim against defendants under § 2923.5, the court dismisses his claim with prejudice.

**E.     Whether Sanchez Has Adequately Alleged a Negligence Claim**

Defendants next move to dismiss Sanchez's third cause of action for negligence.  To state a negligence claim under California law, a plaintiff must plead: "(1) defendant's legal duty of care toward plaintiff, (2) defendant's breach of that duty, (3) damage or injury to plaintiff, and (4) a causal relationship between defendant's negligence and plaintiff's damages."  *Palm v. United States*, 835 F.Supp. 512, 520 (N.D. Cal. 1993); see also *Krawitz v. Rusch*, 209 Cal.App.3d 957, 963 (1989) ("For a negligence cause of action, the plaintiff must allege a duty, a breach of that duty, and injury to the plaintiff as a proximate result of that breach"); *Peter W. v. San Francisco Unified Sch. Dist.*, 60 Cal.App.3d 814, 820 (1976) ("According to the familiar California formula, the allegations requisite to a cause of action for negligence are (1) facts showing a duty of care in the defendant, (2) negligence constituting a breach of the duty, and (3) injury to the plaintiff as a proximate result").  Defendants argue that Sanchez's claim must be dismissed because he has not adequately alleged any of these elements; specifically, they assert that he has not alleged they owed him a duty of care, that they breached that duty, or that he suffered damages caused by such a breach.[60]

Sanchez acknowledges the general rule that "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."[61]  *Velasquez v. Chase Home Finance LLC*, No. C 10-01641 SI, 2010 WL 3211905, *5 (N.D. Cal. Aug. 12, 2010) (quoting *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1096 (1991)); see also *Gonzalez v. First Franklin Loan Services*, No. 1:09-CV-00941 AWI-GSA, 2010 WL 144862, *8 (E.D. Cal. Jan. 11, 2010) (same)).  The principle that a financial institution owes no duty to a borrower has been extended to loan servicers as well.  *Azzini v. Countrywide Home Loans*, No. 09cv787 DMS (CAB), 2009 WL 5218042, *2 (S.D. Cal. Dec. 29, 2009); *Wong v. Am. Servicing Co., Inc.*, No. 2:09-CV-01506 FCD/DAD, 2009 WL 5113516, *6 (E.D. Cal. Dec. 18, 2009) ("Plaintiffs fail

---

[60]*Id.* at 8-12.

[61]Opposition at 10.

to allege any facts that as a lender, Meridias or Hicks actively participated in the financed enterprise beyond their capacities as lender and lending agent.  Similarly, plaintiffs cite no facts or authority to support their position that American Servicing or MERS owed them a duty of care in their respective capacities as servicer and nominee o[f] the trust.  Rather, in their complaint, plaintiffs describe nothing more than an arms-length loan transaction between defendants and themselves. . . .  As such, under the facts pled in the complaint, defendants owed plaintiffs no duty of care").

Sanchez argues that defendants exceeded the scope of their conventional role as lenders and loan servicers, however, once they engaged in "protracted loan modification negotiations" with him.[62]  Courts have routinely held, however, that "[j]ust as approving an initial loan is within a lender's conventional role, loan modification is also intimately tied to [d]efendant's lending role," and loan modification negotiations do not create a duty of care on the part of the lender or loan servicer.  *Gutierrez v. PNC Mortg.*, No. 10cv01770 AJB, 2012 WL 1033063, *4 (S.D. Cal. Mar. 26, 2012) (quoting *Karimi v. Wells Fargo*, No. CV 11–00461–RGK (OPx), 2011 U.S. Dist. LEXIS 47902, *7 (C.D. Cal. May 4, 2011)).  See also *Juarez v. Suntrust Mortg., Inc.*, No. CV F 13–0485 LJO SAB, 2013 WL 1983111, *12 (E.D. Cal. May 13, 2013) (citing *Nymark* and rejecting plaintiffs' argument that their servicer owed them a duty of care because it mishandled underwriting documentation and engaged in dual tracking); *Bank of America, NA*, No. 11–01232 CW, 2011 WL 3607608, *7 (N.D. Cal. Aug. 15, 2011) (noting that "the weight of authority is against finding a fiduciary relationship or duty of care" between a lender or servicer offering a loan modification and a borrower); *Argueta v. JP Morgan Chase,* No. CIV. 2:11–441 WBS GGH, 2011 WL 2619060, *5 (E.D. Cal. June 30, 2011) (citing *Nymark* and stating that "[p]laintiff's allegations about the loan modification application process are insufficient to plausibly suggest that defendants owed plaintiff a duty of care"); *Lyons v. Coppes v. Wachovia Mortg. Corp.*, No. 2:10–cv–01689–GEB–DAD, 2011 WL 1402878, *7 (E.D. Cal. Apr. 13, 2011) ("Plaintiff has not alleged 'special circumstances' plausibly suggesting Wachovia owed her a duty of care [during

---

[62]Complaint, ¶ 65.

1   the loan modification process] because it 'actively participate[d] in the financed enterprise beyond

2   the domain of the usual money lender.' Therefore, this [negligence] claim is dismissed"); *Sullivan*

3   *v. JP Morgan Chase Bank, NA*, 725 F.Supp.2d 1087, 1094 (E.D. Cal. 2010) (citing *Nymark* and

4   holding that "[p]laintiffs have provided no authority to support their argument that lenders owe

5   borrowers a duty of care not to misinform them about the loan modification process").

6       Holding that a lender assumes no duty of care to borrowers merely because it engages in

7   discussions regarding a loan modification is sound policy, since "absent a duty in the first place

8   to modify a loan or even to evaluate such an application under objective standards limiting the

9   lender's discretion, imposing negligence liability for the mishandling of loan modification

10  applications could be a disincentive to lenders from ever offering modification." *Ottolini v. Bank*

11  *of America*, No. C–11–0477 EMC, 2011 WL 3652501, *7 (N.D. Cal. Aug. 19, 2011).

12      Sanchez cites the recent California appellate court decision in *Jolley v. Chase Home*

13  *Finance, LLC*, 213 Cal.App.4th 872, 898 (2013), for the proposition that defendants owed him

14  a duty of care as a result of their conduct in loan modification negotiations. In *Jolley*, the court

15  held that a lender of a construction loan had made "specific representations" to the borrower

16  concerning "the likelihood of a loan modification" owed the borrower a duty of care. The court

17  reviewed the six factor test set forth in *Biakanja v. Irving*, 49 Cal. 2d 647 (1958), often used in

18  determining whether a duty of care exists. The test involves balancing various factors, including:

19  "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability

20  of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of

21  the connection between the defendant's conduct and the injury suffered, (5) the moral blame

22  attached to the defendant's conduct, and (6) the policy of preventing future harm." *Jolley*, 213

23  Cal.App.4th at 899 (citing *Biakanja*, 49 Cal.2d at 650).

24      The *Jolley* court concluded that the "false assurances given by Chase personnel about the

25  prospects for a loan modification" were sufficient to give rise to a duty of care under this

26  framework. *Id.* at 900-01. It noted that the assurances were indisputably intended to affect the

27  plaintiff, and concluded it was "foreseeable that Jolley would sink more of his own money into

28  the [property], thereby suffering further injury" once foreclosure occurred. *Id.* at 900. The court

also found that actual injury was evident, and concluded that "the upbeat prediction of the availability of a loan modification and . . . rollover of the loan into a conventional mortgage was almost certainly a primary factor in causing this particular injury." *Id.* While the court could not determine "how blameworthy Chase's conduct [might] prove to be," it noted that the fact that "Chase benefited from prolonging the loan renegotiation period and encouraging Jolley to complete construction [at the property] certainly len[t] itself to a blameworthy interpretation." *Id.* For these reasons, the court concluded that Jolley had sufficiently demonstrated that Chase's conduct went beyond that of a mere lender, and that it owed him a duty of care as a result of its representations. *Id.* at 906. See also *Yau v. Deutsche Bank Nat. Trust Co. Americas*, No. 11–57209, 2013 WL 2302438, *3 (9th Cir. May 24, 2013) (Unpub. Disp.) (observing that *Jolley* "applied the six-factor test outlined in [*Biakanja*] and] determine[d] [that] a lender or loan servicer owe[d] a duty of care to a borrower").

Following *Jolley,* district courts in California split as to whether the reasoning in that decision applied to lenders in the residential home loan context. Several courts held that a lender that affirmatively promises a residential home loan modification to a borrower owes the borrower a duty of care. Compare *Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C 10-03892 WHA, 2011 WL 1134451, *4-7 (N.D. Cal. Mar. 28, 2011) (holding that defendant lender/servicer "went beyond its role as a silent lender and loan servicer" when it allegedly made an affirmative promise that it would modify plaintiffs' loan, and plaintiffs relied to their detriment on that promise, and stating that the bank "agreed to place plaintiffs on a trial modification plan, guaranteeing that if plaintiffs made payments on time in the modified amount for three months, Chase would provide a permanent modification of their loan"); cf. *Ottolini v. Bank of America*, No. C–11–0477 EMC, 2011 WL 3652501, *7 (N.D. Cal. Aug. 19, 2011) (holding that a servicer did not owe a duty of care to mortgagor because "the application for loan modification had not progressed to a concrete stage," and distinguishing *Ansanelli* because there "the lender agreed to place the borrower on a loan modification plan") with *Diunugala v. JP Morgan Chase Bank*, No. 12cv2106–WQH–NLS, 2013 WL 5568737, *4 (S.D. Cal. Oct. 3, 2013) ("The Court finds *Jolley* to be inapposite to this case, which involves a residential home loan and related loan servicing issues"); *Ware v. Bayview*

*Loan Servicing, LLC,* No. 13-CV-1310 JLS (NLS), 2013 WL 4446804, *5 (S.D. Cal. Aug. 16, 2013) (finding that no duty of care was owed where a servicer told a mortgagor that approval of a loan modification was imminent).

Recently, the Fourth District California Court of Appeal considered a case similar to this one and addressed whether *Jolley*'s reasoning extended to the residential home loan context. *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.App.4th 49 (2013). Richard Lueras sued Bank of America after it foreclosed on his home thirteen days after sending him a letter promising that no foreclosure sale would occur while Lueras was being considered for foreclosure avoidance programs. *Id.* at 55. Lueras had applied for a HAMP loan modification. In response, Bank of America offered to put him in a forebearance program that reduced his monthly payments; it also promised to consider whether "additional default resolution assistance" could be offered to him. *Id.* at 57. Lueras made monthly payments under the forebearance program for 10 months, during which time Bank of America did not work with him to implement a more permanent foreclosure alternative. *Id.* at 58. Lueras then submitted all information required for a HAMP loan modification application; while he was waiting for a response from Bank of America, the trustee, ReconTrust, served a notice of default and notice of trustee's sale. *Id.* Lueras alleged that Bank of America then made an oral offer to modify his loan under HAMP, which he accepted. *Id.* at 58. He asserted that, subsequently he received a letter stating that the bank had determined he was not eligible for a modification; when he called to inquire, the bank told him this was an error. *Id.* at 58-59. On May 6, 2011, he received another letter stating that Bank of America was reviewing his documents to determine whether he was eligible for a HAMP loan modification. *Id.* at 59. The letter stated that he would be notified that the modification had been approved, notified that he was not eligible for a loan modification, or that the bank needed more information to make a decision. *Id.* When Lueras contacted the bank, he was informed that the second letter had also been in error as his application had already been approved. *Id.* Nevertheless, on May 18, 2011, the bank conducted a foreclosure sale. *Id.*

The *Lueras* court first surveyed the law regarding a lender's duty of care to a borrower and then focused specifically on *Jolley*.  It held:

> "We disagree with *Jolley* to the extent it suggests a residential lender owes a common law duty of care to offer, consider, or approve a loan modification, or to explore and offer foreclosure alternatives. . . .  We conclude a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money.  A lender's obligations to offer, consider, or approve loan modifications and to explore foreclosure alternatives are created solely by the loan documents, statutes, regulations, and relevant directives and announcements from the United States Department of the Treasury, Fannie Mae, and other governmental or quasi-governmental agencies. The *Biakanja* factors do not support imposition of a common law duty to offer or approve a loan modification. If the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct.  If the lender did not place the borrower in a position creating a need for a loan modification, then no moral blame would be attached to the lender's conduct." *Id.* at 67.

The *Lueras* court did hold, however, "that a lender . . . owe[s] a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale.  The law imposes a duty not to make negligent misrepresentations of fact." *Id.* at 68-69.

Based on this analysis, the *Lueras* court concluded that Bank of America could not be liable for negligence based on the loan modification discussions because "Lueras [had] not allege[d] [that] Bank of America . . . did anything wrongful that made him unable to make the original monthly loan payments.  Lueras did not allege Bank of America and ReconTrust caused or exacerbated his initial default by negligently servicing the loan.  To the contrary, he alleged his inability to make the payments was caused by financial hardship." *Id.* at 68.  The court held that Bank of America could not be liable for failing to "follow through" on an agreement it had made

with Lueras to modify his loan because the remedy for that failure "lies in breach of contract, not negligence." *Id.*  It granted leave to amend, however, because it found that Lueras could possibly allege adequately that Bank of America negligently misrepresented the status of the application for the loan modification or the date, time, or status of the foreclosure sale.  *Id.*

Under *Lueras,* Sanchez's negligence claim must be dismissed to the extent it is based on an allegation that defendants had a duty to him because they engaged in protracted loan modification negotiations with him. Under *Lueras*, there is no common law duty to offer or approve a modification.  See *id.*; *Aspiras v. Wells Fargo Bank, N.A.*, 162 Cal.Rptr.3d 230, 242-43 (Cal. App. Aug. 21, 2013) (Unpub. Disp.) (holding, in a case involving the possible modification of a residential loan, that the reasoning in *Jolley* was dicta, that the circumstances underlying residential loans and construction loans are distinguishable, and that "the handling of loan modification negotiations or servicing is a typical lending activity that precludes imposition of a duty of due care").  Thus, Sanchez's negligence claim is dismissed to the extent it alleges that defendants are liable because they engaged in protracted loan modification negotiations or offered and then reneged on a promise to modify Sanchez's loan.  Because it may be possible for Sanchez to allege facts sufficient to state a claim for negligence, however, the court dismisses the claim with leave to amend.

It appears, rather, that if defendants are to be held liable for negligence, it can only be because Sanchez's negligence claim is actually a claim that defendants made negligent misrepresentations about the status of his loan modification application or foreclosure proceedings. "The elements of negligent misrepresentation include: (1) misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage." *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1201 n. 2 (9th Cir. 2001).

"Claims for fraud and negligent misrepresentation must meet the heightened pleading requirements of Rule 9(b)." *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1093 (C.D. Cal. 1999); see also *U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F.Supp.

1053, 1058 (N.D. Cal. 1991).  Under Rule 9(b), fraud allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  See *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)); see also *Schreiber Distributing Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"); *Miscellaneous Serv. Workers Local # 427 v. Philco–Ford Corp.*, 661 F.2d 776, 782 (9th Cir. 1981) (holding that Rule 9(b) requires a pleader to set forth the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation"); *Dielsi v. Falk*, 916 F.Supp. 985, 995 n. 12 (C.D. Cal. 1996) ("The fraud complaint should generally set out the time, place, and content of alleged misrepresentations, who made the statements, [and] why they were false, as well as set forth specific facts to show the defendant's knowledge of material falsity," citing *In re GlenFed Securities Litig.*, 42 F.3d 1541, 1547–58 (9th Cir. 1994) (en banc), superseded by statute on other grounds as stated in *Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996)); see also *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1969) ("By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate").

Sanchez's complaint does not adequately allege a negligent misrepresentation claim. Sanchez does not plead that Aurora ever made a material misrepresentation to him.  Although he asserts that Aurora sent him a letter promising that it would forward his information to Nationstar, and that Nationstar later failed to credit his account for the $30,000 payment he had made to Aurora, he does not contend that Aurora failed to send the information to Nationstar.  Likewise, although he alleges that Nationstar first told him it had a record of the $30,000 payment and later told him it did not, Sanchez does not plead that either statement was a misrepresentation.  Nor does Sanchez allege that Nationstar promised him that it would not initiate foreclosure proceedings or that, as in *Lueras*, Nationstar told Sanchez he had been approved for a loan modification when

that was not true.  Although Sanchez alleges that Aurora told him he would be approved for a loan modification after making either the $30,000 payment or payment of an additional $14,000 as well, he does not allege that this was a misrepresentation.  Consequently, construed as a negligent misrepresentation claim, Sanchez's negligence claim is not adequately pled.  It is possible, however, that Sanchez can add factual allegations that will be sufficient to plead that either Aurora or Nationstar negligently misrepresented to him the status of his loan modification application.  For this reason, the court grants Sanchez leave to amend.

### F.    Whether Sanchez Has Adequately Pled a Promissory Estoppel Claim

Defendants next move to dismiss Sanchez's promissory estoppel claim.  Under California law, the elements of such a claim are: "'(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [that is] both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.'"  *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. C 07-02864 JSW, 2007 WL 3232276, *6 (N.D. Cal. Nov. 1, 2007) (quoting *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal.App.3d 885, 890 (1976)).  A promise "that is vague, general or of indeterminate application is not enforceable."  To be enforceable, the promise must be sufficiently definite that "'a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.'"  *Id.* (quoting *Aquilar v. Int'l Longshoremen's Union Local #10*, 966 F.2d 443, 446 (9th Cir. 1992), and *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1017 (9th Cir. 2003)).

Sanchez alleges that defendants promised him that "if he furnished [$]30,000 dollars, his home would not be foreclosed upon and . . . he would obtain a loan modification."[63]  Defendants first argue the claim must be dismissed because Sanchez's estoppel claim "because he alleges a

---

[63]Complaint, ¶ 71.  Defendants did not make this argument in their motion, but the court notes that it appears Sanchez's promissory estoppel claim against Nationstar will likely fail, as there are no allegations that Nationstar ever made or adopted such a promise.  Rather, Sanchez alleges it was Aurora that promised him these things.

1   bargained-for agreement exchanged for consideration."[64]  While it is true that Sanchez's claim for

2   promissory estoppel is based on a contract theory, parties are entitled to plead claims in the

3   alternative under Rule 8.  See *Molsbergen v. United States*, 757 F.2d 1016, 1018 (9th Cir. 1985)

4   ("As a threshold matter, we note that the district court erred in construing count two of appellant's

5   complaint as an admission against count one. . . .  Indeed, to permit such a construction would

6   undermine the clear intent of the Federal Rules of Civil Procedure, which explicitly authorize

7   litigants to present alternative and inconsistent pleadings.  Pursuant to Rule 8(e)(2), '[a] party may

8   set forth two or more statements of a claim or defense alternatively or hypothetically.'  The Rule

9   further provides that '[a] party may also state as many separate claims or defenses as he has

10  regardless of consistency'").

11      While Sanchez cannot ultimately recover on both his breach of contract and promissory

12  estoppel claims, see *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984) (promises

13  supported by adequate consideration cannot form the basis for a promissory estoppel claim), the

14  mere fact that he pled both claims does not mean the promissory estoppel claim must be dismissed.

15  *Molsbergen*, 757 F.2d at 1018; see also *Sam Kholi Ents., Inc. v. BOC Grp., Inc.*, No. 11CV299

16  DMS, 2011 WL 3298902, *6 (S.D. Cal. Aug. 1, 2011) ("To the extent that Plaintiff's claims for

17  promissory estoppel and breach of contract are in conflict, the federal rules allow a plaintiff to

18  plead inconsistent claims in a complaint"); *SOAProjects, Inc. v. SCM Microsystems, Inc.*, No.

19  10–CV–01773–LHK, 2010 WL 5069832, *9 (N.D. Cal. Dec. 7, 2010) ("By claiming both breach

20  of contract and promissory estoppel, SOAProjects is simultaneously alleging that those promises

21  were part of a valid contract and that they were unsupported by consideration.  Even though

22  SOAProjects' breach of contract and promissory estoppel claims are mutually exclusive, . . . the

23  federal rules allow plaintiffs to plead inconsistent claims and theories. . . .  Therefore, SCM's

24  motion to dismiss SOAProjects' promissory estoppel claim is denied").      Defendants next

25  contend that Sanchez has not pled a clear and unambiguous promise.  They cite the fact that his

26  complaint inconsistently alleges both that defendants promised they would not initiate foreclosure

27  _____

28      [64]Motion at 12-13.

27

proceedings, and that defendants promised they would not initiate foreclosure proceedings *and* would allow Sanchez to obtain a loan modification.[65]   Defendants also note that Sanchez has inconsistently pled both that in exchange for this promise by defendants, Sanchez agreed to pay $30,000, and that in exchange for the promise he agreed to pay $30,000 *and* repay the $14,000 in arrears by making payments from August 2012 to February 2013.   While these allegations, taken individually, are not vague or general, they are inconsistent.   The court therefore cannot determine the scope of the duties and the limits of performance Sanchez is alleging.   For example, although Sanchez argues in his opposition that the fact he failed to make payments from August 2012 to February 2013 does not invalidate his promissory estoppel claim, the court cannot evaluate whether this is true because it is unclear whether Sanchez alleges that Aurora promised to modify his home loan and not initiate foreclosure proceedings if he paid $30,000 or only if, in addition, he made monthly payments from August 2012 to February 2013.   The court also cannot evaluate whether Sanchez suffered damages due to the filing of the notice of trustee's sale because the period for which defendants purportedly agreed not to initiate foreclosure proceedings is unclear on the face of the complaint.   Absent allegations concerning these subjects, the court cannot determine whether defendants' subsequent actions breached the purported promise.

Finally, Sanchez has not adequately alleged detrimental reliance.   He asserts that he relied on defendants' alleged promise to his detriment by selling his car to fund the $30,000 payment, and by not "resort[ing] to alternative means to save his home."[66]   Making the $30,000 payment, however, no matter how he came up with the money, is not cognizable reliance because Sanchez was contractually bound to make loan payments to Aurora and in fact owed more than $30,000 under the terms of the loan agreement.   See *De La Cruz v. Citi Mortg. Inc.*, No. 1:12-cv-0141-AWI-BAM, 2012 WL 487004, *3 (E.D. Cal. Feb. 14, 2012) ("[P]laintiffs do not allege sufficient reliance on the new representation, in that plaintiffs already were bound contractually to make loan payments.   Accordingly, Plaintiffs do not state a claim for promissory

---

[65]*Id.* at 13.

[66]Complaint, ¶ 77.

28

estoppel”); *Ortiz v. America's Servicing Co.*, No. EDCV 12–191 CAS (SPx), 2012 WL 2160953, *7 (C.D. Cal. June 11, 2012) (“Merely submitting a modification application or making payments to the beneficiary or servicer, however, is insufficient to establish the required detrimental reliance, because plaintiff was already legally obligated to make payments under the loan”); *Lawther v. OneWest Bank, FSB*, No. C–10–00054 JCS, 2012 WL 298110, *19 (N.D. Cal. Feb. 1, 2012) (“This Court has previously held, along with other courts, that where the injury alleged as a result of reliance is that the plaintiffs made payments that they were already obligated to make under the loan contract, no claim for promissory estoppel is stated,” citing cases); see also *Lueras*, 221 Cal.App.4th at 79 (stating, in the context of a fraud claim, that “[c]ontinuing to make payment on [a] loan . . . does not constitute detrimental reliance because Lueras already had the obligation to make those payments”).

Sanchez's assertion that he did not resort to alternative means of saving his home also fails adequately to plead detrimental reliance because the allegation is too vague and conclusory. Sanchez does not plead what alternative means of saving his home he might have taken, nor does he plead facts suggesting that any of these alternatives would have been successful in avoiding any damages he purportedly suffered as a result of defendants' conduct. His claim fails for this additional reason as well.  See *Nguyen v. PennyMac Loan Servs., LLC,* No. SACV 12–01574 CJC (ANx), 2012 WL 6062742, *8 (C.D. Cal. Dec. 5, 2012) (“[P]laintiff does not sufficiently allege detrimental reliance.  The Complaint contains only conclusory statements that Plaintiff failed to file for bankruptcy or ‘investigate’ other ‘possible scenarios to stave off impending foreclosure.’ Such general allegations of detrimental reliance are insufficient to plead promissory estoppel, and fail to meet even the basic pleading standard of Rule 8 and T*wombly*.  Plaintiff does not allege that he was induced to take some specific action, that he actually changed his position in reliance on Defendants' purported promises, or that other possible workout options he might have pursued would have been successful”); *Mehta v. Wells Fargo Bank, N.A.*, No. 10CV944 JLS, 2011 WL 1157861, *2 (S.D. Cal. Mar. 29, 2011) (“Plaintiff attempts to plead reliance by alleging that he would have pursued other means to avoid foreclosure had Wells Fargo not promised to delay the sale.  In support, Plaintiff identifies several means – tendering funds to cure the default, obtaining

1   a temporary restraining order, and seeking bankruptcy protection.  What Plaintiff has not alleged,

2   however, is whether he realistically could have pursued these options three business days before

3   the sale.  The SAC does not allege any facts suggesting that Plaintiff would have been successful

4   in taking legal action"); *Newgent v. Wells Fargo Bank, N.A.*, No. 09cv1525 WQH (WMC), 2010

5   WL 761236, *7 (S.D. Cal. Mar. 2, 2010) ("Plaintiff alleged[ ] she failed to take legal action to

6   delay the trustee's sale because she believed Wells Fargo had already agreed to delay the sale in

7   exchange for her $2,500.77 payment.  Plaintiff does not, however, allege facts that could establish

8   that Plaintiff would have been successful in delaying the foreclosure sale, renegotiating her loan,

9   and retaining possession of the home").

10         For all these reasons, Sanchez's promissory estoppel claim must therefore be dismissed.

11   Because it is possible he can adequately plead such a claim, however, the dismissal is without

12   prejudice.

13         **G.     Whether Sanchez Has Adequately Pled a Promissory Fraud Claim**

14         Promissory fraud is a "subspecies of the action for fraud and deceit," and lies "where a

15   defendant fraudulently induces a plaintiff to enter into a contract."  *Lazar v. Superior Court*, 12

16   Cal.4th 631, 638 (1996).  "The action is one [for] deceit, which requires proof that the defendant

17   made a misrepresentation of fact or a promise without any intention of performing it."  *Service*

18   *by Medallion, Inc. v. Clorox Co.*, 44 Cal.App.4th 1807, 1816 (1996).  To plead a fraud claim,

19   a party must allege the following elements: (1) a knowingly false representation by the defendant;

20   (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting

21   damages.  *Croeni v. Goldstein*, 21 Cal.App.4th 754, 758 (1994).  An alleged promise to do or not

22   do something in the future is not actionable fraud unless the party making the promise does so

23   with no present intention of performing it.  See *Tenzer v. Superscope*, 39 Cal.3d 18, 30 ((1985)

24   ("[P]roof that a promise was made and that it was not fulfilled is [not] sufficient to prove fraud.

25   . . . Rather, 'something more than nonperformance is required to prove the defendant's intent not

26   to perform his promise'"); *Tarmann v. State Farm Mutual Auto. Ins. Co.*, 2 Cal.App.4th 153,

27   158-59 (1991) ("To maintain an action for deceit based on a false promise, one must specifically

28   allege and prove, among other things, that the promisor did not intend to perform at the time he

1   or she made the promise and that it was intended to deceive or induce the promisee to do or not

2   do a particular thing. . . .  Simply put, making a promise with an honest but unreasonable intent

3   to perform is wholly different from making one with no intent to perform and, therefore, does not

4   constitute a false promise"); see also *Nastrom v. JPMorgan Chase Bank, N.A.*, No. 1:11cv01998

5   DLB, 2012 WL 5522795, *5 (E.D. Cal. Nov. 14,  2012) ("[F]ailure to carry out a promise 'does

6   not constitute fraud unless, when the promise was made, the defendant secretly intended not to

7   perform or knew that he could not perform,'" quoting *Mills v. Polar Molecular Corp.*, 12 F.3d

8   1170, 1176 (2d Cir. 1993)).

9       As noted, under federal pleading standards, "a party must state with particularity the

10  circumstances constituting fraud or mistake." FED.R.CIV.PROC. 9(b).  "Rule 9(b) demands that,

11  when averments of fraud are made, the circumstances constituting the alleged fraud be specific

12  enough to give defendants notice of the *particular* misconduct so that they can defend against the

13  charge[.]" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis added

14  and internal citations omitted).  Thus, "[t]o avoid dismissal for inadequacy under Rule 9(b)," a

15  "complaint [must] 'state the time, place, and specific content of the false representations as well

16  as the identities of the parties to the misrepresentation.'"  *Edwards v. Marin Park, Inc.*, 356 F.3d

17  1058, 1066 (9th Cir. 2004) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393

18  (9th Cir. 1989), and *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th

19  Cir. 1986)); see also *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1548.

20      Conclusory allegations are insufficient, and the facts constituting the fraud must be alleged

21  with specificity.  See *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)

22  ("A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so

23  that a defendant can prepare an adequate answer to the allegations.  While statements of the time,

24  place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of

25  fraud are insufficient" (citation omitted)); see also *Swartz*, 476 F.3d at 764 ("Federal Rule of Civil

26  Procedure 9(b) requires more specificity including an account of the 'time, place, and specific

27  content of the false representations as well as the identities of the parties to the

28  misrepresentations.'  'To comply with Rule 9(b), allegations of fraud must be specific enough to

1   give defendants notice of the particular misconduct which is alleged to constitute the fraud charged

2   so that they can defend against the charge and not just deny that they have done anything wrong,'"

3   citing *Edwards*, 356 F.3d at 1066, and *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.

4   2001)); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (to satisfy Rule 9(b), "the complaint

5   [must] identif[y] the circumstances of the alleged fraud so that defendants can prepare an adequate

6   answer" (internal quotation marks omitted)); *Flowers v. Wells Fargo Bank, N.A.*, No. C 11–1315

7   PJH, 2011 WL 2748650, *6 (N.D. Cal. July 13, 2011) (explaining that "[f]raud allegations must

8   be specific enough to give defendants notice of the particular misconduct that is alleged to

9   constitute the fraud so that they can defend against the claim. For corporate defendants, a plaintiff

10  must allege the names of the persons who made the allegedly fraudulent representations, their

11  authority to speak, to whom they spoke, what they said or wrote, and when it was said or written"

12  (citations omitted)).

13          Defendants contend that Sanchez's promissory fraud claim fails because he has not pled

14  with specificity that defendants ever made a promise with intent not to perform.[67]  The court

15  agrees. As discussed, Sanchez has inconsistently pled the terms of defendants' alleged promise.

16  Even if the court were able to discern the terms of the promise, moreover, Sanchez has not

17  adequately alleged facts showing that defendants made the promise with no intention of performing

18  it. Although Sanchez pleads that Santiago was the Aurora agent who made the promise and that

19  she did so in May 2012, he alleges no facts that would support an inference that Santiago made

20  the promise without an intention of performing it.  Nor does he plead facts indicating that,

21  whatever Santiago's intentions, defendants did not intend to honor the promise.  Consequently,

22  the court cannot conclude that Sanchez has satisfied Rule 9(b). *Cafasso, ex rel. United States v.*

23  *General Dynamics C4 System, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) ("To satisfy Rule 9(b),

24  a pleading must identify the who, what, when, where, and how of the misconduct charged, as well

25  as what is false or misleading about [the purportedly fraudulent] statement, and why it is false"

26  (internal quotation marks omitted)).  Sanchez alleges that some time in May 2012, Santiago

27  

28          [67]Motion at 15.

32

1    promised either that Aurora would not initiate foreclosure proceedings or both that it would not

2    initiate foreclosure proceedings and would allow Sanchez to modify his loan.  As respects

3    Santiago's and defendants' intentions, however, Sanchez pleads only that "Defendants clearly

4    induced [Sanchez] to enter [into] this contract and pay [$]30,000 dollars, all the while never

5    intending to keep their end of the bargain and not foreclose upon the Subject Property."[68]

6           Accepting this type of conclusory allegation as sufficient to state a promissory fraud claim

7    would "potentially turn every breach of contract claim into one of fraud as well, so long as the

8    plaintiff adds to his complaint a general allegation that the defendant never intended to keep [its]

9    promise." *Audigier Brand Management v. Perez*, No. CV 12–5687–CAS, 2012 WL 5470888,

10   *5 (C.D. Cal. Nov. 5, 2012) (citations omitted).  Similarly, allegations that defendants later failed

11   to honor the promise do not suffice to plead that they did not intend to do so when the promise

12   was made.  See *Jhaveri v. ADT Sec. Services, Inc.*, 2:11–CV–4426, 2012 WL 843315, *4-5

13   (C.D. Cal. Mar. 6, 2012) ("[F]raudulent intent cannot be proven . . . by simply pointing to the

14   defendant's subsequent failure to perform as promised. . . .  That Defendant failed to perform on

15   these promises does not plausibly give rise to an inference that Defendant never intended to honor

16   the contract"); *Richardson v. Reliance Nat. Indem. Co.*, No. C 99-2952 CRB, 2000 WL 284211,

17   *5 (N.D. Cal. Mar. 9, 2000) ("Adopting plaintiff's argument [that a mere allegation that

18   defendant subsequently failed to perform its contractual obligations suffices to state a fraud claim]

19   would effectively eviscerate the effect of Rule 9(b) in every case of promissory fraud.  Under

20   plaintiff's theory, every breach of contract would support a claim of fraud so long as the plaintiff

21   adds to his complaint a general allegation that the defendant never intended to keep her promise.

22   Plaintiff provides no support for such an exception to the strictures of 9(b)"); see also *Audigier

23   *Brand Management*, 2012 WL 5470888 at *5 ("[P]laintiff's allegations of false promises are

24

25

26

27

─────────────

28          [68]Complaint, ¶ 65.

insufficiently particular to satisfy Rule 9(b), because plaintiff offers no underlying facts on which its beliefs are founded – other than allegations relating to defendant's post-agreement conduct").

In his opposition, Sanchez argues that "[t]he callousness of Defendants['] conduct clearly evidences Defendant[ ]s['] intent to induce [Sanchez] to enter [into] this contract and pay [$]30,000 dollars."[69]  Even if this allegation were in the complaint, which it is not, it would be insufficient to plead that defendants had a present intention not to perform when Santiago made the alleged promise to Sanchez because it is simply another manner of alleging that defendants' purported failure to perform indicates that they never intended to perform.  Such an allegation is insufficient.  Rather than rely on defendants' subsequent purported breach of contract, Sanchez must plead, with particularity, facts showing that defendants had no intention of performing their promises at the time they made them.  See *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) ("[U]nder Rule 9(b), a plaintiff must point to *facts* which show that defendant harbored an intention not to be bound by terms of the contract at formation" (emphasis original)); *Smith v. Allstate Ins. Co.*, 160 F.Supp.2d 1150, 1152-53 (S.D. Cal. 2001) ("[T]he plaintiff must plead facts explaining why the statement was false when it was made.  A plaintiff can satisfy this requirement in a number of ways: by pointing to inconsistent contemporaneous statements or information which was made by or available to the defendant; [or] later statements made by the defendant along the lines of 'I knew it all along.'" . . . [T]he plaintiff is precluded from simply pointing to a defendant's statement, noting that the content of the statement conflicts with the current state of affairs, and then concluding that the statement in question was false when made"); *Richardson*, 2000 WL 284211 at *4-5 ("Because circumstances often change, 'a plaintiff must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading when made.  This can be done most directly by pointing to inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to the defendants,'" quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1549).  Because Sanchez has not adequately pled an intent not to perform at the time the promise

---

[69]Opposition at 13.

1   was made, his fraud claim must be dismissed.  Because it is possible he can allege facts showing

2   that defendants never intended to keep Santiago's promise, the court dismisses the claim with leave

3   to amend.

4         **H.**      **Whether Sanchez Has Adequately Pled a Breach of Contract Claim**

5         Sanchez next pleads a breach of contract claim.  Defendants argue that the claim must be

6   dismissed because any oral agreement the parties reached is barred by the statute of frauds.[70]  To

7   state a breach of contract claim, a party must show: (1) the existence of a contract; (2) the party's

8   performance under that contract or an excuse for nonperformance; (3) the defendant's breach; and

9   (4) resulting damages.  *Alvarado v. Aurora Loan Services, LLC*, No. SACV 12–0524 DOC

10  (JPRx), 2012 WL 4475330, *4 (C.D. Cal. Sept. 20, 2012) (citing *McKell v. Washington Mut.,*

11  *Inc.*, 142 Cal.App.4th 1457, 1489 (2006)).

12        "California law requires four elements to form a valid contract: 1) parties capable of

13  contracting; 2) their mutual consent; 3) a lawful object; and 4) sufficient consideration." *Tenet*

14  *Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*, 520 F.Supp.2d 1184, 1193 (C.D. Cal. 2007)

15  (citing CAL. CIV. CODE §§ 1550, 1565).  See also RESTATEMENT (SECOND) OF CONTRACTS § 17

16  ("[T]he formation of a contract requires a bargain in which there is a manifestation of mutual

17  assent to the exchange and a consideration").  "Contract formation . . . requires that the parties[ ]

18  reach mutual assent or consent on definite or complete terms. . . .  Mutual assent is accomplished

19  when a specific offer is communicated to the offeree, and an acceptance is subsequently

20  communicated to the offeror." *Netbula, LLC v. BindView Development Corp.*, 516 F.Supp.2d

21  1137, 1155 (N.D. Cal. 2007) (citations omitted).

22        "A mortgage or deed of trust . . . comes within the statute of frauds." *Id.* (citing CAL.

23  CIV. CODE § 2922 ("A mortgage can be created, renewed, or extended, only by writing, executed

24  with the formalities required in the case of a grant of real property")).  Because "[a]n agreement

25  to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds,"

26  an agreement to modify a mortgage is subject to the statute of frauds as well. *Id.* at 553 (citing

27  ─────────────────

28      [70]Motion at 17.

CAL. CIV. CODE § 1698(a) and *Collins v. Marvel Land Co.*, 13 Cal.App.3d 34, 43 (1970)).  This applies both to agreements altering a borrower's payment schedule under an existing mortgage and agreements altering the lender's ability to foreclose in the event of the borrower's default.  *Id*.  Under California law, "[a] contract coming within the statute of frauds is invalid unless it is memorialized by a writing subscribed by the party to be charged or by the party's agent."  *Secrest v. Security Nat. Mortg. Loan Trust 2002-2*, 167 Cal.App.4th 544, 552 (2008) (citing CAL. CIV. CODE § 1624).

> Sanchez's breach of contract claim alleges that, by entering into the mortgage,
> "[Sanchez] was the borrower and Defendants were the lender in the purchase of the
> Subject Property.  As lender, Defendants should have been ready to provide
> [Sanchez] with [the] means by which he could avoid foreclosure and be current on
> his payments again.  Instead, however, Defendants prolonged the loan modification
> review process, promised to avoid the foreclosure of [Sanchez's] home in exchange
> for [$]30,000, took [Sanchez's] [$]30,000 dollars and foreclosed upon his home."[71]

It is unclear from this allegation whether Sanchez asserts that defendants breached the terms of the original written mortgage or that they breached an alleged oral promise to Sanchez or both.  In his opposition, Sanchez cites only Santiago's alleged oral promise as the basis for the claim and does not address defendants' argument that that purported agreement is subject to the statute of frauds.  To the extent, therefore, that Sanchez's claim is based on a breach of defendants' alleged oral promise, the claim must be dismissed because it is an oral contract modifying the terms of the mortgage, and is therefore barred by the statute of frauds.[72]  See *Sequoia Partners, LLC v. F.D.I.C.*, No. 1:11–3057–CL, 2012 WL 1657049, *3 (D. Or. Mar. 13, 2012) ("[T]he statute of frauds, while an affirmative defense, may be the proper subject of a motion to dismiss where the defense is apparent on the face of the complaint," citing *McCalden v. Cal. Library Ass'n*, 955

---

[71]Complaint, ¶ 91.

[72]This aspect of the claim must also be dismissed because, as noted, inconsistent pleading throughout the complaint as to what the parties allegedly promised to do makes the terms of the purported agreement unclear.

36

F.2d 1214, 1219 (9th Cir. 1990)).  The court dismisses this aspect of Sanchez's claim with leave to amend, however, because, although it appears unlikely, it is possible Sanchez can allege the parties had a written agreement to amend the terms of the mortgage, or that defendants are estopped from raising the statute of frauds as a defense.[73]

To the extent Sanchez's claim is based on a purported breach of the original written mortgage agreement, the claim also fails.  "[I]f the action is based on alleged breach of a written contract, the relevant terms must be alleged in the body of the complaint or a copy of the written agreement must be attached and incorporated by reference."  *Harris v. Rudin, Richman & Appel*, 74 Cal.App.4th 299, 307 (1999); see also *McKell,* 142 Cal.App.4th at 1489.  Sanchez has not attached a copy of the mortgage loan agreement as an exhibit, nor has he pled the relevant terms of the agreement.  Rather, as noted, he alleges only that because defendants were the lenders, they "should have" assisted him in avoiding foreclosure.  Because Sanchez has not adequately pled the terms of his mortgage loan agreement or attached a copy of the agreement as an exhibit, he has not pled a cognizable claim that defendants breached the original loan contract, and this aspect of his claim must be dismissed.  The court grants Sanchez leave to amend, however, because it is

---

[73]A defendant is estopped from raising the statute of frauds as a defense where the other party has partially performed and "a sufficient change of position has occurred so that the application of the statutory bar would result in an unjust and unconscionable loss, amounting in effect to a fraud."  *Anderson v. Stansbury*, 38 Cal.2d 707, 715-16 (1952).  "The payment [of] money [however] is not 'sufficient part performance to take the oral agreement out of the statute of frauds, for the party paying money 'under an invalid contract has an adequate remedy at law.'"  *Id.* (citing *Shive v. Barrow*, 88 Cal.App.2d 828, 848 (1948), and *Woerner v. Woerner*, 171 Cal. 298, 301 (1915)).  Thus, a mortgagor's payment of money to a mortgage servicer under an alleged oral agreement modifying the terms of a mortagor's payments is not part performance sufficient to estop a defendant from raising the statute of frauds as a defense to the oral modification agreement.  See *Secrest v. Security National Mortgage Loan Trust 2002-2*, 167 Cal.App.4th 544, 555-56 (2008) ("The Secrests argue their making the downpayment on the January 2002 Forbearance Agreement constituted part performance sufficient to estop Respondents from asserting the statute of frauds.  This argument fails under well-established law").  Nor does it constitute full performance, as estoppel under the theory that a party to an oral agreement unenforceable under the statute of frauds has fully performed "has been limited to the situation where performance consisted of conveying property, rendering personal services, or doing something other than payment of money."  *Id.* at 556.

1  possible, although again unlikely, that Sanchez can plead that defendants agreed in the mortgage

2  loan contract to assist him in avoiding foreclosure.

3      It is also possible that Sanchez's reference to his "mortgage" instead refers to the deed of

4  trust, which is attached to the complaint.  See *Aviel v. Ng*, 161 Cal.App.4th 809, 816 (2008)

5  ("[T]he function and purpose of deeds of trust and mortgages are identical, and 'except for the

6  passage of title for the purposes of the trust, [deeds of trust] are practically and substantially only

7  mortgages with a power of sale,'" citing *Bank of Italy etc. Assn. v. Bentley*, 217 Cal. 644, 657

8  (1933)).  So interpreted, Sanchez's claim still fails because the deed of trust expressly provides

9  that the lender has the power to sell the property in the case of a default and does not reveal any

10  promise by the lender to "provide [Sanchez] with means by which he could avoid foreclosure and

11  be current on his payments again" as alleged.  Because a review of the deed of trust demonstrates

12  that Sanchez cannot allege the document required defendants to assist Sanchez in avoiding

13  foreclosure and because the deed of trust states that the lender has the power to sell the property

14  in the event of default, the court dismisses Sanchez's breach of contract claim to the extent based

15  on the deed of trust with prejudice.

16  **I.    Whether Sanchez Has Adequately Pled a Breach of the Covenant of Good Faith**

17  **and Fair Dealing Claim**

18      Sanchez's next pleads a claim for breach of the implied covenant of good faith and fair

19  dealing.  California law implies a covenant of good faith and fair dealing in every contract.

20  *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 371

21  (1992); see also *Chodos v. West Publishing Co.*, 292 F.3d 992, 996 (9th Cir. 2002) (noting that

22  "California law, like the law in most states, provides that a covenant of good faith and fair dealing

23  is an implied term in every contract" (citations omitted)).  The covenant is implied "to prevent a

24  contracting party from engaging in conduct which (while not technically transgressing the express

25  covenant) frustrates the other party's rights [to] the benefits of the contract."  *Marsu B.V. v. Walt*

26  *Disney Co.*, 185 F.3d 932, 938 (9th Cir. 1999) (citing *Los Angeles Equestrian Ctr., Inc. v. City*

27  *of Los Angeles*, 17 Cal.App.4th 432, 447 (1993)).

28

"The implied covenant of good faith and fair dealing acts as a 'supplement to express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement.'" *Moncada v. Allstate Ins. Co.*, 471 F.Supp.2d 987, 996 (N.D. Cal. 2006) (quoting *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 44 (1995). Thus, there can be a breach of the covenant even if the express terms of the contract are not breached. See *Schwartz v. State Farm Fire and Cas. Co.*, 88 Cal.App.4th 1329, 1339 (2001) ("It is well-established that a breach of the implied covenant of good faith is a breach of the contract . . . and that breach of a specific provision of the contract is not a necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing"). However, "[i]t is universally recognized [that] the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers*, 2 Cal.4th at 373.

Defendants argue that Sanchez's breach of the implied covenant claim fails because there is no enforceable contract underlying the claim. The court agrees. "[A] prerequisite [to] any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." *Smith v. City and County of San Francisco*, 225 Cal.App.3d 38, 48-49 (1990). Because Sanchez's breach of contract claim fails, his breach of the implied covenant claim fails as well. See, e.g., *Krouse v. BAC Home Loans Servicing, LP*, No. 2:10–cv–03309–MCE–EFB, 2011 WL 6100406, *5 (E.D. Cal. Dec. 6, 2011) ("This Court previously granted Defendant's Motion to Dismiss Plaintiffs' breach of good faith claim because no underlying contract was established. Again, because Plaintiffs have failed to establish the existence of an enforceable contract, this claim is dismissed"); *Justo v. Indymac Bancorp*, No. SACV 09-1116 JVS (AGRx), 2010 WL 623715, *7 (C.D. Cal. Feb. 19, 2010) (holding that plaintiffs' breach of contract claim was not cognizable where it alleged an oral agreement to provide them with a permanent loan modification because it was subject to the statute of frauds, and stating that "because the alleged oral contract is unenforceable under the statute of frauds, Plaintiffs' breach of implied covenant claim fails with respect to that contract. And with respect to the loan agreement, the defendants could not have

1    breached an implied covenant by foreclosing on the subject properties because the Deeds of Trust

2    expressly permit foreclosure.  The implied covenant cannot prohibit that which the contract

3    expressly permits").  Because the court has granted Sanchez leave to amend his breach of contract

4    claim, it is possible he can adequately alleged an enforceable contract that can form the basis for

5    a breach of the implied covenant claim.  For that reason, the court dismisses the claim with leave

6    to amend.

7            **J.      Whether Sanchez Has Adequately Pled an IIED Claim**

8            Defendants next move to dismiss Sanchez's IIED claim.  To state an IIED claim under

9    California law, a plaintiff must allege "(1) that the defendant's conduct was outrageous, (2) that

10   the defendant intended to cause or recklessly disregarded the probability of causing emotional

11   distress, and (3) that the plaintiff's severe emotional suffering was (4) actually and proximately

12   caused by defendant's conduct."  *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004).

13   Outrageous conduct is that "which goes beyond all possible bounds of decency so as to be

14   regarded as atrocious and utterly intolerable in a civilized community."  *Gomon v. TRW, Inc.*, 28

15   Cal.App.4th 1161, 1172 (1994).  Liability does not extend to mere insults, indignities, threats,

16   annoyances, petty oppressions, or other trivialities. *Fisher v. San Pedro Peninsula Hospital,* 214

17   Cal.App.3d 590, 617 (1989).

18          Sanchez's IIED claim is based on allegations that defendants agreed to review his loan for

19   a modification, requested that he provide documents to complete the application, mismanaged the

20   applications, "failed to handle his documents with reasonable care, assured [Sanchez] they would

21   continue to work with him in his loan modification efforts, and . . . abruptly notified [Sanchez]

22   that he was to lose his home to foreclosure despite the fact that [he] had complied with his end of

23   the bargain and paid the [$]30,000 dollars to the bank."[74]  Although Sanchez asserts that he sent

24   defendants numerous documents over a period of months, he does not detail how it is that

25   defendants failed to handle his documents with reasonable care.  This aspect of his claim is too

26   vague and conclusory to state a claim under *Iqbal*.

27   _____

28          [74]Complaint, ¶¶ 96-97.

Sanchez's allegations, moreover, do not plausibly allege that defendants engaged in extreme and outrageous conduct. "In the context of debt collection, courts have recognized that the attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress. . . . Such conduct is only outrageous if it goes beyond 'all reasonable bounds of decency.'" *Ross v. Creel Printing & Publishing Co.*, 100 Cal.App.4th 736, 745 (2002) (citing *Bundren v. Superior Court*, 145 Cal.App.3d 784, 789 (1983)). Thus, "a simple mortgage modification denial, without more, [cannot] constitute outrageous conduct." *Lesley v. Ocwen Financial Corp.*, No. SA CV 12–1737–DOC(JPRx), 2013 WL 990668, *11 (C.D. Cal. Mar. 13, 2013).

In *Wilson v. Hynek*, 207 Cal.App.4th 999, 1009 (2012) the California Court of Appeal affirmed the trial court's dismissal of an IIED claim mortgagors asserted against the mortgagee for initiating nonjudicial foreclosure proceedings related to their property. The mortgagors alleged that the mortgagee intentionally induced them to offer their residence as additional security for a purchase money loan on undeveloped land by promising orally that,

> "(1) in the event of a foreclosure, the lender would first foreclose on the vacant land and, only if there were a deficiency, would the lender foreclose on their residence; (2) the residence would be released once they provided Polo Fund with an appraisal showing the vacant land to be worth at least $5 million; and (3) the loan documents would guarantee and provide that the residence would only be foreclosed upon if there were a deficiency after the foreclosure of the vacant land."
>
> *Id.* at 1001.

Plaintiffs alleged that they relied on these representations in signing the loan documents, and that defendants later conspired to foreclose on the residence after plaintiffs defaulted on the loan. *Id.* at 1004-05. Affirming the trial court's dismissal of plaintiffs' IIED claim, the court held that "this was a creditor/debtor situation, whereby the defendants were exercising their rights under the loan agreements. There are no allegations that in conducting the foreclosure proceedings any of the defendants threatened, insulted, abused or humiliated the [plaintiffs]." *Id.* at 1009.

1    Likewise, here, Sanchez's allegations that defendants mishandled his loan modification

2    documents and promised to work with him to achieve a modification, but then initiated nonjudicial

3    foreclosure proceedings, are insufficient as a matter of law to plead extreme and outrageous

4    conduct beyond all reasonable bounds of decency.  While Sanchez asserts that defendants' conduct

5    caused him stress and anxiety, he does not plead that defendants threatened, insulted, abused, or

6    humiliated him.   Absent such allegations, Sanchez cannot state an IIED claim.  See, e.g.,

7    *Lindberg v. Wells Fargo Bank N.A.*, No. C 13–0808 PJH, 2013 WL 3457078, *1 (N.D. Cal. July

8    9, 2013) ("To the extent th[e] [IIED] claim is based on loan modification efforts, plaintiff has not

9    (and cannot) allege that Wells Fargo's behavior [in engaging in dual tracking by requesting

10   documentation for a loan modification and telling plaintiff not to be concerned about foreclosure

11   while pursuing nonjudicial foreclosure proceedings by recording a notice of trustee's sale] was

12   sufficiently 'outrageous' to give rise to an emotional distress claim"); *Hardwood v. Bank of

13   America*, No. 2:10–cv–02450–GEB–KJM, 2010 WL 5287539, *4-5 (E.D. Cal. Dec. 17, 2010)

14   (dismissing an IIED claim where plaintiffs alleged that defendants "waited for 10 months to

15   respond to Plaintiffs' short sale offer which led . . . Plaintiffs' Bona Fide Purchaser to rescind the

16   purchase agreement," causing plaintiffs anxiety due to their constant fear of "the impending sale

17   of their home and the loss of the large amount of money invested in their home," and stating that

18   "[t]hese allegations are insufficient to state a claim. . . .   The allegation that Defendant's conduct

19   was 'extreme and outrageous' is conclusory, and Plaintiff[s] have not alleged any conduct by

20   Defendant beyond that 'generally accepted in the debt collection and/or the foreclosure process,

21   which is inherently stressful for debtors'" (internal citation omitted)).  Accordingly, the court must

22   dismiss the claim.  Because it is possible Sanchez can amend to allege sufficiently that defendants

23   engaged in outrageous conduct, the court grants leave to amend.

24   **K.    Whether Sanchez Has Adequately Pled a UCL Claim**

25   "The UCL prohibits 'any unlawful, unfair or fraudulent business act or practice and unfair,

26   deceptive, untrue or misleading advertising.'"   *Stearns v. Select Comfort Retail Corp.*, No.

27   08-2746 JF (PVT), 2010 WL 2898284 *16 (N.D. Cal. July 21, 2010) (quoting CAL. BUS. &

28   PROF. CODE § 17200).  "'An act can be alleged to violate any or all of the three prongs of the

UCL – unlawful, unfair, or fraudulent.'" *Id.* (quoting *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal.App.4th 1544, 1554 (2007)).  The law is "sweeping, embracing anything that can properly be called a business practice and [that is] at the same time . . . forbidden by law." *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999); *Palestini v. Homecomings Fin., LLC*, No. 10CV1049-MMA, 2010 WL 3339459, *9 (S.D. Cal. Aug. 23, 2010) (same).  California courts have held that "an action under the UCL is not an all-purpose substitute for a tort or contract action." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1150 (2003) (citations and internal quotation marks omitted).

Sanchez's UCL claim is based on an allegation that defendants engaged in unfair business practices by intentionally deceiving and misleading him, i.e., by causing him to believe he was going to receive a permanent loan modification and by extending modification negotiations intentionally for many months in order to add charges increasing the unpaid balance of the loan, despite knowledge that they would never approve a loan modification.[75]  Defendants contend that Sanchez's claim must be dismissed because it sounds in fraud and Sanchez has not adequately pled the claim with the particularity required by Rule 9(b).[76]

"Conduct is considered 'fraudulent' under the UCL if the conduct is 'likely to deceive.'" *Casault v. Federal Nat. Mortg. Ass'n*, 815 F.Supp.2d 1113, 1129 (C.D. Cal. 2012).  Allegations that sound in fraud must meet the heightened pleading requirements of Rule 9.  As noted, under Rule 9(b), fraud allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." See *Swartz*, 476 F.3d at 764 (citing *Edwards*, 356 F.3d at 1066); see also *Schreiber Distrib. Co.*, 806 F.2d 1401 ("[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"); *Miscellaneous Serv. Workers Local # 427*, 661 F.2d at 782 (holding that Rule 9(b) requires a pleader to set forth the "time, place and

---

[75]Complaint, ¶¶ 122-130.

[76]Motion at 23.

specific content of the false representations as well as the identities of the parties to the misrepresentation").

Although Sanchez pleads his UCL claim under the unfair prong, the claim is based on allegations of intentional deception and fraudulent conduct.  It is therefore subject to the heightened pleading requirements of Rule 9(b) and must be dismissed for the same reason his fraud claim has been dismissed, namely, that Sanchez has failed to allege with particularity exactly what defendants promised, and he has wholly failed to allege facts showing defendants intended not to offer him a loan modification at the time they engaged in loan modification discussions with him.  See *Khan v. CitiMortgage, Inc.*, __ F.Supp.2d __, 2013 WL5486777, *13 (E.D. Cal. Sept. 30, 2013) ("The FAC lacks facts of an unlawful, unfair or fraudulent business practices to support a UCL claim, despite Ms. Khan's unsubstantiated claims. . . .  As demonstrated throughout this order, the complaint's claims fail and thus cannot serve as a predicate violation for a UCL claim"); *Bejou v. Bank of Am., N.A.*, No. CV F 13–0125 LJO SMS, 2013 WL 1759126, *5 (E.D. Cal. Apr. 24, 2013) ("Reliance on other invalid claims fails to support a viable UCL claim").  Because Sanchez may be able to amend his complaint to plead plausibly that defendants never intended to offer him a loan modification, the court dismisses the claim with leave to amend.[77]

---

[77]Sanchez's claim also fails to the extent it is based upon alleged injury to his credit, inability to refinance his property, and incurring attorneys' fees in this action because these injuries "even if caused by Defendants, could have been avoided if [Sanchez] had made timely mortgage payments." *Lyons v. Bank of America, NA*, No. 11–01232 CW, 2011 WL 3607608, *12 (N.D. Cal. Aug. 15, 2011).  To state a viable claim for relief under the "unfair" prong of the UCL, plaintiff must show that "(1) the consumer injury [is] substantial; (2) the injury [is] not . . . outweighed by any countervailing benefits to consumers or competition; and (3) it [is] an injury that consumers themselves could not reasonably have avoided." *Camacho v. Auto. Club of S. Cal.*, 142 Cal.App.4th 1394, 1403 (2006); see *Kilgore v. Keybank*, No. C08-2958 TEH, 2010 WL 1461577, *8 (N.D. Cal. Apr. 12, 2010) (concluding that the *Camacho* unfairness standard applied to a consumer unfair business practices action, citing *Davis v. Ford Motor Credit Co.*, 179 Cal.App.4th 581, 596-98 (2009)); *Jackson v. Ocwen Loan Servicing LLC*, No. 2:10–cv–00711–MCE–GGH, 2010 WL 3294397, *5 (E.D. Cal. Aug. 20, 2010) ("To sufficiently plead an action based on an 'unfair' business act or practice, a plaintiff must allege facts showing the 'unfair' nature of the conduct and that the harm caused by the conduct outweighs any benefits that the conduct may have," citing *Motors, Inc. v. Times Mirror Co.*, 102 Cal.App.3d 735, 740 (1980)).  As noted, Sanchez has not adequately alleged that defendants took any action that

1       **L.      Whether Sanchez Has Adequately Pled a Quiet Title Claim**

2              Sanchez's final cause of action seeks to quiet title to the property.  Defendants move to

3    dismiss the claim because neither Sanchez nor defendants hold title to the property.[78]  The purpose

4    of a quiet title action is to establish one's title against adverse claims to real or personal property

5    or any interest therein.  See CAL. CODE CIV. PROC. § 760.020(a).  "A quiet title action must

6    include: (1) a description of the property in question; (2) the basis for plaintiff's title; (3) the

7    adverse claims to plaintiff's title; (4) the date as of which the determination is sought; and (5) a

8    prayer for determination of plaintiff's title against the adverse claims."  *Distor*, 2009 WL 3429700

9    at *6 (citing CAL. CODE CIV. PROC. § 761.020(a)–(e)); *Metcalf v. Drexel Lending Group*, No.

10   08-CV-00731 W POR, 2008 WL 4748134, *5 (S.D. Cal. Oct. 29, 2008) (citing CAL. CODE CIV.

11   PROC. § 761.020); see also *Cleveland v. Deutsche Bank Nat. Trust Co.*, No. 08cv0802 JM(NLS),

12

13

14

---

15

16   damaged his credit score.  Even had he adequately alleged such actions, however, Sanchez's claim
     would fail because he could have avoided the injuries by making timely mortgage payments.  See
17   *Roussel v. Wells Fargo Bank*, No. C 12–04057 CRB, 2012 WL 5301909, *7 (N.D. Cal. Oct. 25,
     2012) ("As pleaded, Plaintiff does not have standing on his claims involving Defendant's conduct
18   during the loan modification process. . . . Plaintiff points to no clause in his loan agreement that
     gives him the right to be considered for or receive a loan modification, or that obliges Defendant
19   to consider him for a loan modification.  Since Defendant had no duty to consider Plaintiff's loan
     modification, Defendant's failure to properly consider Plaintiff's loan modification application was
20   not the cause of the imminent foreclosure of Plaintiff's home; rather, Plaintiff's default on his
     mortgage caused the imminent foreclosure"); *Lyons v. Bank of America*, No. 11–01232 CW, 2011
21   WL 3607608, *12 (N.D. Cal. Aug. 15, 2011) (concluding that plaintiffs failed to state a claim
     under the unfairness prong of the UCL because "[t]he alleged injuries suffered by Plaintiffs, a
22   lowered credit score and having to defend against a wrongful foreclosure proceeding, even if
     caused by Defendants, could have been avoided if Plaintiffs had made timely mortgage
23   payments"); *DeLeon v. Wells Fargo Bank, N.A.*, No. 10–CV–01390–LHK, 2011 WL 311376,
     *7 (N.D. Cal. Jan. 28, 2011) (rejecting plaintiffs' contention that "if they had known that Wells
24   Fargo never intended to complete the loan modification process, they would have instead
     concentrated their efforts on reinstating the loan" because plaintiffs were already in default, and
25   concluding for this reason that plaintiffs lacked standing under the UCL).

26

27

28       [78]Motion at 24.

1  2009 WL 250017, *5 (S.D. Cal. Feb. 2, 2009) (identifying the same elements, and citing CAL.

2  CODE CIV. PROC. § 761.020).

3        While Sanchez's opposition addresses all of his other causes of action, it makes no mention

4  of the quiet title claim.  Consequently, the court considers the claim abandoned and dismisses it

5  with prejudice.  See, e.g., *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1031 (N.D. Cal. 2012)

6  (granting a motion to dismiss after noting that "[p]laintiffs' opposition failed to address their claim

7  for unjust enrichment.  Accordingly, the Court deems this claim abandoned"); *In re Facebook*

8  *Privacy Litigation*, No. C 10-02389 JW, 2011 WL 6176208, *2 n. 5 (N.D. Cal. Nov. 22, 2011)

9  (granting a motion to dismiss after noting that "Plaintiffs' Opposition does not address either the

10  Wiretap Act cause of action or Defendant's Motion to Dismiss as to that cause of action); *In re*

11  *TFT–LCD (Flat Panel) Antitrust Litig.*, 586 F.Supp.2d 1109, 1131 (N.D. Cal. 2008) (granting a

12  motion to dismiss a claim without leave to amend after noting that plaintiffs' opposition did not

13  address defendants' arguments regarding the claim, and that plaintiffs had therefore abandoned

14  the claim).

15        Even had Sanchez not abandoned the claim, the court would dismiss it with prejudice

16  because Sanchez has not pled the basis for his title, and allowing amendment would be futile given

17  clear allegations and judicially noticed documents showing that he sold the property to Lee.

18  Specifically, the complaint alleges that Sanchez sold the property to a third party – indeed, his

19  basis for damages is the fact that he had to sell the property for less than its market value; the

20  grant deed of which the court has taken judicial notice shows that Sanchez transferred title to Lee.

21  Accordingly, even had Sanchez not abandoned the claim, the court would dismiss it with

22  prejudice.

23

24                              **III.  CONCLUSION**

25        For the reasons stated, the court grants defendants' motion to dismiss.  The court dismisses

26  Sanchez's PMRA and quiet title claims with prejudice.  The court dismisses Sanchez's claims for

27  negligence, promissory estoppel, promissory fraud, breach of the implied covenant of good faith

28  and fair dealing, IIED, and UCL claims with leave to amend.  It dismisses Sanchez's HBOR claim

against Aurora, and so much of that claim against Nationstar as is based on Civil Code § 2924.10(a) with prejudice.  It dismisses all other aspects of the claim against Nationstar with leave to amend.  Finally, the court dismisses Sanchez's breach of contract claim to the extent it is based on a purported breach of the deed of trust with prejudice.  It dismisses the breach of contract claim to the extent based on a breach of the original written mortgage or an oral promise to halt foreclosure proceedings and approve a loan modification with leave to amend.  Any amended complaint must be filed within twenty (20) days of the date of this order.  No new claims may be pled or parties added.

DATED: March 11, 2014

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE